CASE 93—INDICTMENT—JANUARY 23.

## Commonwealth v. Schwartz.

APPEAL FROM SHELBY CIRCUIT COURT.

1. OBTAINING MONEY BY FALSE PRETENSES.—If one obtains a loan of money from another by a false pretense as to an existing fact, although he intends to repay it, he is guilty of the crime of obtaining money under false pretenses.

A member of an insolvent banking firm, who obtained a loan of money by pretending that his bank was solvent when he knew or had reason to believe that it was not, was guilty of obtaining money under false pretenses. And this is true, although he obtained possession of the money rightfully and afterwards obtained the loan by the false pretense.

2. SAME.—Where one who is in possession of money belonging to another obtains the title by false pretenses, he is guilty of the statutory offense of obtaining money by false pretenses. In such a case it is not necessary to constitute the offense that the possession should have been obtained by false pretenses.

W. J. HENDRICK, ATTORNEY GENERAL, R. REID ROGERS FOR APPELLANT.

1. To constitute the offense charged in this case the intention to cheat or defraud must appear, but the intent is to be inferred from all the circumstances of the transaction and is always a question for the jury. (7 Am. and Eng. Encyclopedia of Law, 105; 76 Mo., 180; People v. Kendall, 37 Am. Dec., 240.)

There was abundant evidence from which the jury might have inferred the intention to deceive, and that question at least should not have been taken from them.

2. Where there is a combined falsehood and promise the case is within the statute, though it appear that the promise, as well as the representa-

tion, was the inducement of the prosecutor to part with his money. (Commonwealth v. Wallace, 114 Pa. St., 405; Queen v. West Cox, C. C., 12; 7 Am. and Eng. Encyclopedia of Law, 717.)

3. As there was testimony tending to show that the representations were made by defendant with a *knowledge* of their falsity, that question was for the jury.

4. The falsity of the pretense and the maker's knowledge of it are to be proved only approximately and inferentially. (Wharton's Crim. Law, 1165 and 1185.)

5. If any one of defendant's statements was untrue, and designedly made with the intention of cheating prosecutrix out of her money, the offense was made out. (Bishop's Crim. Law, vol. 2, 418.)

6. It was not necessary to show an *actual manual delivery* by prosecutrix to defendant in order to make out the offense.

All statutes should be construed with a view to carry out the intention of the Legislature. (Gen. Stats., chap. 21, sec. 15.)

ABBOTT & RUTLEDGE, O'NEAL, PHELPS & PRYOR for AP-PELLEE.

1. Whenever money is deposited in bank the relation of debtor and creditor is at once established between the bank and the depositor, and the bank simply owes the depositor the amount of money deposited.

2. To establish the offense charged in the indictment, it was necessary to show that the prosecuting witness was induced by defendant's false representations to part not only with the title, but with the *possession*, of twenty-five hundred dollars in money, United States currency or bank notes.

3. A defendant can not be proved guilty of one offense by showing that he has committed other similar offenses. (Miller & Smith v. Commonwealth, 83 Ky., 23; Cowan v. State, 23 Neb., 524; People v. Bishop, 81 Cal., 117; People v. Van Alsten, 57 Mich., 80; Jackson v. People, 126 Ill., 148; Malcolm v. State, 25 Tex. App., 290.)

4. Any variance as to the money obtained or as to the nature of the property between the allegations in the indictment, and the proof introduced by the prosecution, is fatal. (Am. and Eng. Encyclopedia of Law, vol. 7, p. 789; Commonwealth v. Howe, 132 Mass., 250; Reg. v. Brady, 26 Up. Can. Q. B., 13.)

5. To constitute the offense charged the money must have been *actually* and not *impliedly* obtained. There is a broad distinction between money *obtained* and money *retained*. (Jameson v. State, 37 Ark., 445; Watson v. People, 27 Ill. App., 493.)

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

On the trial of the appellee, under an indictment for obtaining money by false pretenses, the court instructed

the jury absolutely to find for him. The Commonwealth appeals from the judgment acquitting the appellee under that instruction.

Are the indictment and the evidence sufficient to have authorized the jury to pass upon the question of the guilt or innocence of the appellee ?

The indictment charges that the appellee obtained by false pretenses, and with the intention to defraud Maria Buchholtz, twenty-five hundred dollars; that he was a banker and had a safe place to invest the money; that his bank was solvent and safe and able to repay her money at any time upon thirty days' notice; that the laws of the State did not allow him to pay her but four per cent. interest, but he would give her six per cent. interest, but would enter only four per cent. on her book, if she would leave her money with him; that she relied upon said representation and let him have the money, but his said representations were false and fraudulent, but made with a design to deceive her, and did deceive her, whereby he obtained the said twenty-five hundred dollars and appropriated the same to his own use, and she was permanently deprived of it, etc., etc.  The testimony of said Maria Buchholtz is in substance that on the 24th day of February, 1891, she took a note and mortgage which she held on some Chicago parties for twenty-five hundred dollars to the banking house of the appellee in the city of Louisville and employed him at the price of ten dollars to take charge of said papers and collect the money.  He agreed to do so promptly and to notify her when the money was collected; that not hearing anything from the appellee, on the 9th of March, which was Monday, she again visited his banking house and inquired after the col-

lection; that the appellee told her that he had collected
the money on Saturday previous, but too late to notify her.
She then expressed a desire to have the money, and he
replied that if she did not need the money to let it remain
there, that he had a solid, safe place for it; that the bank
was good and able to pay, or he was able to pay, and he
would pay her four per cent. for the money, and repay
the money itself at any time after thirty days' notice.
She declined to take four per cent.  He then, after con-
sulting with one of his partners, said that he would give
her six per cent. for the use of the money, but would
make a memorandum of the transaction in her book
showing only four per cent., as the law did not allow him,
or that he was not allowed, to pay over four per cent.
She then consented to let him have the money upon said
terms, saying that if she should lose it she would be turned
into the street, as that was all she had and no one to help
her; and he replying, "Oh, we are able to pay."

The witness being a German and not speaking or un-
derstanding our language well there is some confusion
and apparent contradiction in her evidence, but the fore-
going is a fair synopsis of it.  It was also in evidence
that at the time mentioned the appellee and his bank
were hopelessly insolvent, amounting to about $420,000.00
net, and the jury would have been authorized to infer
that the appellee knew it.

Article 13, section 2, chapter 29, General Statutes, pro-
vides: "If any person by false pretense, statement or
token, with intent to commit a fraud, obtain from another
money, property or other thing which may be the subject
of larceny    *    *    *    he shall be confined in the peni-
tentiary," etc.

If the appellee was enabled to borrow said money from Mrs. Buchholtz by falsely pretending that his bank was solvent when he knew or had reason to believe that it was not, is he guilty of the crime denounced by the statute *supra?* Upon that subject the rule is well settled that if a person obtains a loan of money from another by a false pretense of an existing fact, although he intended to repay it, he is guilty of the crime of obtaining money by false pretenses. (See American and English Encyclopædia of Law, vol. 7, pp. 752–3, and notes.) Also upon the subject that the false pretense must be of an existing fact, see Glackan v. Commonwealth, 3 Met., 232.

The false pretense of an existing fact in this case, if any false pretense there was, consists in the false representation that the appellee's bank was solvent and the loan was safe, when he knew or had reason to believe that it was insolvent and unable to pay, and which induced her to make the loan, or if he induced her to loan the money by false pretense that he had a safe place to invest it upon which she would realize six per cent., intending at the time to appropriate the money to his own use, to-wit: that of the bank, knowing or having reason to believe that the bank was insolvent, although he intended to repay her, such false pretenses, if made as indicated, were sufficient to authorize the case to go to the jury.

But it is contended that, as the appellee, at the time he obtained the loan of the money, had it in his possession, the statutory offense of receiving money by false pretenses was not made out because, under the statute, the offense is not made out unless both possession and title are obtained by the false pretense, and as the appellee did not

obtain the possession by the false pretense, the offense was not made out.

The counsel for the appellee refer to many cases that sustain that proposition, and we concur with the general principle therein announced; but we think that principle does not apply to this case. For that principle only applies where it takes the delivery of the possession to complete the transfer of the title to the property. The statute reads, " obtain from another money or property." So, according to all the authorities, if it takes the delivery of the property to deprive the owner of dominion over it, the defendant must have obtained the delivery as well as the title before he can be made liable under the statute *supra*.

Mr. Wharton in the second volume of his work on Criminal Law (sec. 1227, 9th Ed.), correctly sums up the meaning of all the cases upon the subject in the following language : " A delivery of the property must be averred, as the result of false pretenses, in all cases in which the prosecution rests upon such delivery." Of course, as said, if the delivery is necessary to complete the transfer of the property, the prosecution in that case "rests" upon such delivery. To illustrate the rule : Suppose A, by false pretenses, buys a horse from B, but B does not deliver the horse to A; in such case it can not be said that A has, in the sense of the statute, obtained B's property by false pretense, because, as yet, B has the property ; he has not parted with it, and by reason of the fraud, he is not bound to part with it; hence he has not parted with his property by the false pretenses of A. But if the property is so situated that B can make a complete transfer of the property to A without delivering the

possession to him, and such transfer is obtained by false pretenses, then there is an offense against the statute. The rule is illustrated by the following authorities : Bishop (2 Crim. Law, section 465, 7th Ed.) says : "If, after goods are delivered, the vendor becomes suspicious of the solvency of the purchaser, and expresses his intention to reclaim them, whereupon the latter, by false pretenses, induces him to relinquish his purpose, there is no offense against the statute, the sale having been completed before the false pretenses were made ; and, though the right of stoppage *in transitu* may remain, the rule appears to be the same, the relinquishment of right not being deemed a parting with the goods. But, where the sale is on condition subsequent and a delivery thereupon, and afterwards the vendor is induced by false pretenses to give up his property in the goods, this is probably within the statute."

In the case of People v. Haynes, 11 Wend., 557, it was held by the Supreme Court that, where goods were delivered to a person, but the title did not pass to him except upon condition, and, after the delivery, the purchaser obtained the title by false pretenses, he was guilty of obtaining the goods by false pretenses. Upon appeal to the Court of Appeals that court approved of the principle announced, but reversed the case on the ground that the sale was absolute.

In the case of Commonwealth v. Hutchinson, 114 Mass., 327, it was held, under a statute that provided if any person obtained, by false pretenses, the signature of another to a writing that would be forgery at common law, he should be punished, etc., that if it was necessary that the writing should be delivered in order to

complete the crime of forgery, and it was not delivered, an offense against the statute was not made out; but if the instrument was obligatory upon the signer without delivery, the offense against the statute was made out.

In the case of Commonwealth v. Devlin, 141 Mass., 423, it was held where there was a delivery of sheep to a purchaser, the title not to pass until the sheep were paid for, and the purchaser obtained the title by false pretenses, he was guilty, etc.

These cases establish the doctrine that it is only in case the delivery of the property is necessary in order to completely deprive the owner of it, that the false pretense must relate to such delivery. But if the delivery is not necessary to a complete transfer, the false pretenses need not relate to the delivery in order to make out the offense against the statute. And if the possession has been delivered to the party, but not the right of property, and he, after such delivery, obtains the title by false pretenses, he is guilty under the statute of obtaining goods, etc., by false pretenses. In this case the appellee had collected the woman's money, as her collecting agent, and had the possession of it as such agent; and when she demanded it, he, recognizing her right and the character of his possession, induced her to part with her title to him. In such case, it is clear that the prosecution does not rest upon delivery, as there was a complete transfer of property without the delivery. The case is ordered to be certified, etc.