# Alderson v. Alderson's Guardian, and Same v. Alderson.

APPEAL FROM HENDERSON CIRCUIT COURT.

BASTARDS—JUDGMENT FOR SUPPORT NOT SATISFIED BY MARRIAGE OF PARENTS—DIVORCE—ABANDONMENT—LIABILITY OF WIFE FOR COSTS —ALIMONY.

Held:  1.- It constitutes no defense to an action to enforce a judgment against the putative father for the support of a bastard that the defendant has married the mother, and thus rendered the child legitimate.

2. Though a judgment of divorce can not be reviewed on appeal, the action of the chancellor in the matter of adjudging the costs and as to alimony and maintenance can be reviewed.

3. In granting the husband a divorce it was error, under Kentucky Statutes, section 900, to adjudge the costs against the wife, where she had no estate to pay the same, and, besides, was not in fault; but the husband should instead have been adjudged to pay the costs of the wife, including a reasonable attorney's fee.

4. Where the husband married the wife to end a prosecution against him for her seduction, and it is apparent that his offer to marry her was not made in good faith, but for the purpose of obtaining an improper advantage of her, the fact that under the exciting circumstances attending the marriage she refused to live with him did not entitle him to a divorce on the ground of abandonment, as she offered in a few days thereafter to live with him as his wife; and she is therefore entitled to maintenance and alimony and to the custody of the child.

Alderson v. Alderson's Guardian, and Same v. Alderson.

W. P. McCLAIN AND GIVENS & GIVENS, ATTORNEYS FOR APPELLANT.

In March 1898, Rosa Green sued out a bastardy warrant against appellant, J. W. Alderson, and recovered a judgment against him for $1,300 payable in twenty-five dollar installments every four months.    Being subsequently indicted for seducing Rosa Green under promise of marriage, he proposed to marry her which she accepted, and they were married, but did not afterwards live together. In the meantime, the Ohio Valley Banking and Trust Company, qualified as guardian for the bastard infant, Lola Alderson, and brought this suit to enforce the judgment of the Henderson county court in the bastardy proceedings.

The sole question is, did the marriage render the bastard legitimate?

Section 1398 of the Kentucky Statutes reads as follows: "If a man, having a bastard child by a woman, shall afterwards marry her, such child, if recognized by him before or after marriage, shall be deemed legitimate."

The mother applied for and obtained a divorce from appellant for reasons disclosed in the record.

We claim that the legislative intent disclosed in the statute is twofold:

1. The encouragement of the erring man and woman to repair a wrong.

2. To give to the child a legal if not a moral status.

The Scotch courts placed the reason of this law upon general policy and justice.    "Legitimation is thought to be recommended by those considerations of equity and justice, that it tends to encourage what is at first irregular and injurious to society, into the honorable relation of lawful matrimony and prevent those unseemly disorders in families which are produced, when the elder born children of the same parents are left under the stain of bastardy, and the younger enjoy the status of legitimacy."    Schouler's Domestic Relations (5th ed.) section 226.

It is admitted that appellant is the father of the bastard child; and that he married the mother and thereby recognized her as his child.    We contend that by this act the legitimacy of the child was established and when once established, no act of his or of the mother can destroy its legitimate status.

## AUTHORITIES CITED.

Kentucky Statutes, sec. 1398; Indiana Statutes, sec. 2476; Dannelli v. Dannelli, 4 Bush, 60; 11 Bush, 688; Sams v. Sams' Admr., 85 Ky., 396; Schouler's Domestic Relations (5th ed.) secs. 226, 309; 1 Parson on Contracts, 361, 362, 363, notes, 1;

Brock v. State, *Ex rel.* Johnson, 85 Ind., Jackson's Admr. v. Moore & Wife, 8 Dana, 171.

THOMAS E. WARD, ATTORNEY FOR APPELLEE.

In less than five minutes after the ceremony of marriage was performed between appellant and Rosa Green, the mother of the bastard child, he invited certain of his relatives and friends to go with him to the bride and hear a conversation he was going to have with her.    They went.    He asked her to go home with him.    His prepared witnesses all say she refused outright. Several others who happened to be there, say, she said: "I can not go to-day."    At the conclusion of this brief talk he separated from his wife and child, and has never since spoken to either of them, though living within a mile of them.    He sued for and was granted a divorce on the ground of abandonment, and judgment entered against the wife for costs.    This was all wrong, but no appeal lies from a judgment granting a divorce.    The court, however, enforced payment of the judgment in the bastardy case and the wife has taken a cross appeal from the judgment against her for costs.

I fail to see that the legitimacy or illegitimacy of the child has anything to do with this judgment.    The judgment is in favor of the Commonwealth for the use and benefit of the child.    The mother did not have and never has had any control over it.

Our contention is, that the cause for the judgment was merged in the judgment, and after it was rendered it had the same force and sacredness as a judgment on a promissory note or for any other cause.

This judgment was given expressly for the benefit of the child, and to insure that it would not become a charge on the Commonwealth.    The marrying of the mother and the abandonment of her did not secure this result.    It only kept appellant out of the penitentiary, but did not affect the child or the judgment against him for its benefit.    The appellant never did at any time recognize the child.    The marriage was not entered into in good faith, but only to escape a criminal prosecution.

The judgment in the divorce case against the wife for costs is all wrong, the statute fixes that.    Section 900, Kentucky Statutes, says:    "The husband shall pay the costs and the wife's attorney's fees unless it be shown that she is in fault and also that she has means of her own to pay with," and it is affirmatively shown in this case that she has nothing." Com. v. Turner, 4 Dana, 511; Same v. Davis, 6 Bush, 285; Kentucky Statutes, secs. 176, 1398; Indiana Statutes, sec. 994.

Alderson v. Alderson's Guardian, and Same v. Alderson.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

Appellee John W. Alderson is charged with having seduced Rosa Green under a promise of marriage, an issue of which was the birth of a bastard child, appellee Lola Alderson. The mother of the child caused to be instituted bastardy proceedings against the putative father, resulting in a judgment being rendered in the county court of Henderson county against said appellee for the sum of $1,350 and costs, to be paid in installments of $25, beginning on the 3d day of March, 1898, and $25 on the third day of every fourth month thereafter for 18 years. It was shown that the appellee, instead of paying or in any wise securing the payment of the judgment, or any part of it, was confined in the county jail under the writ of *capias ad satisfaciendum* for ten days, at the end of which time he took advantage of an insolvent debtor's oath, and was discharged from custody. An execution—the writ of *fieri facias*—issued against him upon that judgment, and was returned "No property found." The grand jury of Henderson county indicted appellee, charging him with the felony of having seduced Rosa Green, an unmarried girl, under 21 years of age, under promise of marriage, and of having failed to marry her as agreed. Just upon the eve of the trial, and with the admitted purpose of preventing a conviction, appellee proposed to make good his promise, and marry the prosecutrix. This proposal, under Kentucky Statutes, section 1214, as held by this court in the case of Com. v. Wright, 16 R., 251 (27 S. W., 815), entitled the defendant to a discharge, even if the girl refused to marry him. But in this case the girl accepted the proposal, and they at once repaired to the office of the county court clerk, and were married. The evidence shows that there was much confusion

Vol. 113—53

and excitement among those witnessing the incident. The girl was laboring under intense excitement, and was weeping. She had left her baby, for the time necessary for this ceremony, in the custody of some one outside of the room, and immediately after the ceremony returned to it. Appellee caused some three or four of his friends and kinsmen, selected expressly for the purpose, to immediately accompany him to his wife, where he proposed to take her to his home. The evidence is conflicting as to how the proposal was made. According to appellee's version and that of his witnesses, it was that he proposed to take the wife home to live with him, and that she replied that she would rather be in her grave, and that she declined. As many witnesses upon the other side testified that when appellee made the proposal his wife responded, "I don't see how you can expect me to live with you now after having treated me and spoken of me as you have;" that thereupon appellee turned around, and exclaimed to his witnesses, "Gentlemen, you have heard the proposal and her rejection;" that thereupon he left her, and declared that he would never live with her. Within a short time thereafter, and after she had time to be composed, she stated to an uncle of appellee, which fact was communicated to him, that she was willing to live with him as his wife, and would do so if he would call for her. She was then staying with her father. Appellee declined, and at the end of one year brought a suit against his wife for divorce, alleging that she had abandoned him. Upon the proof above set forth the circuit court decreed to him an absolute divorce, and adjudged that he recover his costs against her. There was nothing said about the custody of the child. In her answer, the wife denied that she was or had been unwilling to live with the appellee as his wife, and she asked, in a

motion made, for maintenance and allowance to enable her to prepare her defense in the suit. This motion seems not to have been acted upon. From the judgment of divorce adjudging the costs against appellant and refusing her any relief she has prosecuted an appeal. This is one of the questions in one of the cases here to be decided.

In the petition filed in the name of the Commonwealth of Kentucky for the use of the Ohio Valley Banking & Trust Company, guardian for Lola Alderson, against J. W. Alderson and others, as the heirs of J. J. Alderson, deceased (J. J. Alderson having been the father of appellee, J. W. Alderson), the recovery of the judgment in favor of the Commonwealth for the use of the infant above recited was set forth. The fact that he had been discharged from custody under the insolvent debtor's oath and of the return of no property was shown. The petition then alleged that after John W. Alderson, appellee, had incurred the liability to the infant above named, he had made a voluntary conveyance of some land owned by him to his father, the father knowing of appellee's purpose to defraud the said infant, and to prevent the collection of any judgment that might be rendered on said claim. The land was described in the petition. It was also charged that the decedent, J. J. Alderson, had died intestate, and that appellee John W. Alderson had inherited one-fifth of his estate, subject to the widow's dower; and the land so inherited was described in the petition. A lien was created by the service of the summons upon this petition based upon the return of "No property found," under section 439 of the Code. The defense relied upon by John W. Alderson to that proceeding, and practically the only defense relied on so far as affecting his interest in the undivided estate, was that by the marriage with the

mother of the child, Lola, it became legitimate, and was thereby recognized by him as his child, and that every purpose of the statute had been served, and that the judgment became thereby satisfied. Under section 1214 of the statute concerning seduction of a female under 21 years of age under promise of marriage it is provided: "No prosecution shall be instituted when the person charged shall have married the girl seduced; and any prosecution instituted shall be discontinued, if the party accused marry the girl seduced before final judgment." Section 1398 of Kentucky Statutes reads as follows: "If a man having had a child by a woman shall afterwards marry her, such child or its descendants, if recognized by him before or after marriage, shall be deemed legitimate." Under this section it is argued for appellee that this suit is based solely on the assumption that the child is a bastard, and it is argued that such a marriage makes lawful that which until then was unlawful. We can not agree that the effect of the marriage can be extended beyond the plain and manifest purpose of the sections in which the subject is treated. Under section 1214 the full extent of the marriage is to end the prosecution for seduction. Any other liability that the parties may have incurred will remain until otherwise discharged. Section 1398 is found in the chapter on "Descent and Distribution," and has to do alone with those subjects. It is an enabling statute, qualifying the recognized bastard offspring of a decedent to inherit his estate in case of his dying intestate. Under the bastardy statute the proceeding is not for the benefit of the mother of the child. Construing the earliest statutory provisions on this subject—the statute of 18 Eliz., c. 3—this court, in an opinion delivered by Chief Justice Robertson in the case of Com. v.

Turner. 4 Dana, 511, said: "These legislative enactments were evidently intended for securing three different objects: First, the welfare of helpless and destitute bastard children; second, the relief of the parishes from the burden of supporting such persons; and third, justice to their mothers, and the enforcement of the natural obligations of their fathers. It is evident that our statute of 1795, prescribing the mode of proceeding in cases of bastardy, is but a re-enactment of the substance of that of George II, only more detailed and expansive in its provisions." The court held that the mother was incompetent to effect a compromise of, or to in any wise control, the proceedings in the prosecution after it had once been instituted; that it was a matter in which the child primarily, and the public as well, had an interest, and which would be enforced without reference to the wishes or conduct of the principals in the preceding acts. This opinion was later followed in the case of Com. v. Davis, 6 Bush, 295. If the parties could not compromise such proceeding before judgment, it must follow with equal force that they could not compromise or otherwise render nugatory the judgment that had been rendered in such a proceeding. If, by their subsequent marriage—in other words, their contract—they could discharge the father from the claims of the infant and the public imposed by the judgment of the county court, it would be leaving the enforcement of this wholesome statute to the discretion and will of designing and frequently unprincipled fathers and weak, foolish mothers. This, it was declared in Com. v. Turner, the State would not allow. In this case the circuit court disallowed this defense of Alderson, the putative father, and he has appealed. We are of opinion that the judgment upon this branch of the case should be affirmed, which is done, with damages.

The two cases above referred to were consolidated and heard together, and, while we can not review the action of the circuit court in granting the divorce to appellee John W. Alderson, we can review its action upon the matter of adjudging the costs and upon the subject of alimony and maintenance. The circuit court erred in adjudging the costs against the wife. It was not shown that she had any estate to pay the same. Furthermore, in our opinion, it was not shown that she was in fault. Section 900, Kentucky Statutes, is: "In actions for alimony and divorce, the husband shall pay the costs of each party, unless it shall be made to appear in the action the wife is in fault and has ample estate to pay the same." On this branch of the case the court is of opinion that the husband should have been adjudged to pay the costs of the wife, including a reasonable fee to her attorney. This fee is to be ascertained by the court as in other cases. Whitney v. Whitney, 7 Bush, 520; Williams v. Monroe, 18 B. Mon., 514.

The court is further of opinion that the offer of the husband under the circumstances and at the time that it was made was not in good faith, and was made for the purpose of obtaining an undue and improper advantage over his wife. It has the appearance of being a studied and heartless scheme to overreach this already sufficiently wronged young woman. Furthermore, even had she abandoned the husband under the excitement and the circumstances attending that occasion, her subsequently recanting, and within a few days offering to submit to all the wifely duties, deprives him of any right to institute and prosecute an action for divorce upon the ground of her abandonment. We hold that in all she did in this litigation, so far as this record discloses, she was right; in all that he did, so far as this record discloses, except in the

one act of marrying the woman, he was wrong.  He should not have been granted a divorce, but that we can not now remedy.  Upon a return of the case, however, the circuit court will ascertain and allow to the wife what will be a reasonable sum for her maintenance and alimony (Wilmore v. Wilmore, 15 B. Mon., 49; Tilton v. Tilton, 16 R., 538, 29 S. W., 290), and will award her the custody of the child.

The judgment of the divorce case is reversed to this extent, and the cause remanded for proceedings not inconsistent herewith.