CASE 102—ACTION FOR A DIVORCE.—SEPTEMBER 18.

# Zumbiel v. Zumbiel.

APPEAL FROM KENTON CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS.    REVERSED.

QUALIFIED DIVORCE—FAILURE TO PROVE GROUND CHARGED—PRAYER FOR GENERAL RELIEF—EVIDENCE OF SETTLED AVERSION—ADULTERY.

Held:   Under Kentucky Statutes, section 2121, providing that "judgment for separation or divorce from bed and board may also be

rendered for any of the causes which allow divorce, or for such
other cause as the court, in its discretion, may deem sufficient,"
in an action for divorce, absolute or qualified, if the complain-
ant does not show the existence of the statutory grounds spe-
cifically relied on, the court may, under a prayer for general
relief, grant a divorce from bed and board, if the facts shown,
being necessarily and incidentally involved in the main charge,
are such as to warrant such an exercise of judgment in the sound
legal discretion of the chancellor.

2  In an action by the wife for divorce from bed and board on
the ground that the husband had behaved toward her, for not
less than six months, "in such cruel and inhuman manner as
to indicate a settled aversion to her, or to destroy permanently
her peace or happiness," evidence that the husband had for more
than six months taken daily walks in unfrequented places with
his co-respondent, had been seen to embrace and kiss her, had
made her gifts, had entered a deserted house with her, and when
charged with adultery had practically admitted his guilt, had
used harsh and cruel epithets to his wife, made efforts to poi-
son the minds of his children against her, and had declared that
he would like to see her come to poverty and want, and that he
had a settled aversion toward her, was sufficient to entitle plain-
tiff to the relief sought.

WM. A. BYRNE, ATTORNEY FOR APPELLANT.

This is an action for divorce from bed and board, for the cus-
tody of the children and for alimony.

The ground for separation is such cruel and inhuman treat-
ment for not less than six months as indicates in appellee a
settled aversion to appellant without fault on her part.

The parties have four children, the youngest, one year old.
It is alleged and shown that the husband is not a fit person to
have the custody of the children.

The evidence shows appellant to be a good, loving wife and
mother, a model housekeeper and a kind, good woman—whilst
the husband has cruelly neglected her and his children and
spent his time and means on other women, especially one girl
in Cincinnati, which his wife caught up with by the aid of
a detective and whom he confessed in his wife's presence that
he loved and expected some day to marry. The evidence shows
him to be cruel and heartless and unworthy of the good wo-
man who has been a faithful wife and mother, in no way de-
serving the neglect and mistreatment he has given her.

He has disposed of his property to defeat her claim for ali-
mony.

We contend that the prayer of the petition should be granted, that the deed made by the appellee to Anna K. Zumbiel be set aside and that he be compelled to support his wife and children; that she be divorced from bed and board and given the custody and control of the children.

O. M. ROGERS, FOR APPELLEE.

The appellant undertook to prove by her witnesses, four of whom have shown themselves to be detectives, experienced in giving testimony in such cases, that appellee was cruel and inhuman in his treatment of her, in at least three separate and distinct ways:

1. That he was always surly and disagreeable to her, especially if he could not have his own way about everything, and was cold and indifferent to her happiness, and manifested no love for her.

2. That he on one occasion laid violent hands on her.

3. That he was on one occasion, during the eleven years they lived together, guilty of conduct evidencing unfaithfulness to his marriage vows.

It is admitted that he was sober, industrious, intensely devoted to his children, a good provider and spent most of his time with his family, and only on the one occasion, during the twelve years of his married life, was he ever suspicioned of paying attention to other women. Finally, one night one of the detectives arrested him on a warrant charging adultery, and while he was with this woman. The woman cried and asked that her mother be not told, and appellee said he would take all the blame. They were released and the prosecution dismissed on motion of appellant, who brought this suit the June following. Under the pleadings in this case, no evidence is competent or relevant except such as tends to prove or disprove the allegations of the petition.

In view of all the facts and circumstances proven in this case, we most earnestly contend that it would be hard, unwarranted, and unauthorized to grant appellant a separation from appellee, bestow the custody of the children on her, and then force him to continue their support. Shrock v. Schrock, 4 Bush, 862; Evans v. Evans, 93 Ky., 510; Irwin v. Irwin, 96 Ky., 318; Wooley's Exr. v. Greenwade's Heirs, 20 R., 624; Sebree Deposit Bank v. Clark, 20 R., 1155; Wicks v. Dean, 19 R., 1718.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

This action for divorce *a mensa et thoro* and for the custody of their children was instituted by the wife, appellant,

on the ground that her husband had so habitually behaved toward her, for not less than six months, in such cruel and inhuman manner as to indicate a settled aversion to her, or to destroy permanently her peace and happiness. The circuit court denied her any relief, and she has appealed.

Section 2121, Kentucky Statutes, enumerating causes for divorce from bed and board, provides: "Judgment for separation or divorce from bed and board may also be rendered for any of the causes which allow divorce, or for such other cause as the court in its discretion may deem sufficient." The principal question presented by this appeal is whether the conduct of the husband, shown by the record, justified or required the granting of a divorce to appellant from bed and board. It is argued for appellee that appellant staked her case upon the statutory provision of section 2117, Kentucky Statutes (sub-sec. 2, applicable to the wife), viz.: "Habitually behaving toward her by the husband, for not less than six months, in such cruel and inhuman manner as to indicate a settled aversion to her, or to destroy permanently her peace and happiness."—and that, if she has not sustained that charge by the proof, her petition was rightfully dismissed. Before entering upon a discussion of the main question involved, it occurs to us that the one of practice raised by appellee's argument is important, and needs settling. It is to be observed that the circuit court is not restricted to the statutory causes for granting divorces *a vinculo matrimonii* in granting divorce from bed and board. He may, in his discretion, grant the latter separation for a less cause than those enumerated in the statute (section 2117). But, as said in Shrock v. Shrock, 4 Bush, 684: "Of course, the discretion thus conferred is not to be understood as arbitrary or unlimited, but a sound legal discretion, and only to be exer-

cised for such causes as may be deemed sufficient, when considered with a just and reasonable regard to the legal rights and obligations of both parties." The plaintiff may rely upon the statutory grounds, or any of them, and may be seeking an absolute, instead of a qualified or limited, divorce. Yet the chancellor is not bound to look alone to the contention or pleas of the parties; indeed, contrary to our general practice, admissions or concessions of right by parties in their pleadings in this class of cases is denied generally by statute. Section 2119, Kentucky Statutes. Should the court conclude upon the hearing that, although the grounds for an absolute divorce are not fully sustained, yet that the interests of the parties, their infant children, and the good of society demand it, he might, under the statute conferring this jurisdiction, grant a divorce *a mensa et thoro*. In Evans v. Evans, 93 Ky., 510 (14 R., 628) (20 S. W., 605), the wife sued the husband for a divorce from bed and board, alleging two of the statutory grounds, one of them being abandonment for the statutory period of one year; the other, adultery. The evidence conduced to show that the husband had actually abandoned his wife but for four months. The husband had continued to live in the same house with the wife, though refusing to recognize her as his wife, or to live or cohabit with her, for more than a year The court construed this to be technically an "abandonment," within the meaning of the statute. The evidence only "tended strongly to show an improper intimacy between the defendant and his co-respondent." The court, evidently to strengthen its position on the question of abandonment, added · "His [the husband's] conduct was of such a character as gave the wife just cause of complaint, and he is, therefore, the offending party. He was at least most certainly guilty of such conduct and abandonment as warrant-

ed the lower court, in the exercise of a sound legal discretion, in finding sufficient cause for a divorce from bed and board." Although the court found—and we think, and have since held, correctly found—that an "abandonment" did not necessarily involve the leaving of the house occupied by the other spouse, yet it went further to hold that, even though that ground for relief was not fully sustained under the pleading charging it, the qualified divorce, under the provisions of section 2121, Kentucky Statutes (Gen. St., c. 52, art. 3, sections 6, 8), could be granted. A question of practice particularly analogous to the one being considered arose before this court concerning the allowance of alimony to the wife. It had been held that an action for alimony or support may be independent of a suit for divorce. Hulett v. Hulett, 80 Ky., 364, 4 R., 193; Hogland v. Hogland. 10 Ky. Law Rep., 241. In a suit by a wife for divorce under a prayer for general relief she was held entitled to recover alimony, although it had not been specifically asked for in the prayer of the petition. Wilmore v. Wilmore, 15 B. Mon., 49. In the later case of Tilton v. Tilton, (16 R., 538) (29 S. W., 290), the court held that, while the facts proven may not justify a divorce, alimony may nevertheless be allowed; that, "if she was entitled to a separation from bed and board, or to an absolute divorce, the right to alimony followed under the prayer for general relief." There was such a prayer in this case. From these authorities, and from the context of the statutes quoted supra, we conclude that in an action for divorce, absolute or qualified, if the complainant does not show the existence of the fixed statutory grounds specifically relied on, yet, under a prayer for general relief, the court may grant a divorce from bed and board, if the facts shown, being necessarily and incidentally involved in the main

charge are such as warrant such an exercise of judgment in the "sound legal discretion of the chancellor."

The question, then, recurs to whether the allegations of the bill were proven, or sufficiently proven, to justify or demand such an exercise of power by the circuit court. It was shown that appellee was employed in a picture molding establishment at Cincinnati. His home was at Erlanger, Ky. He went daily in the morning to his place of business, returning generally on a train leaving Cincinnati at 6:30 p. m. In the fall of 1899 he began staying in the city of Cincinnati over night at times; at others not returning till the last train, which left Cincinnati at 8 o'clock p. m. His explanations to his wife were that his business detained him. She accidentally learned that this was untrue; that he was spending his evenings with a woman, who also lived at Erlanger, but worked in Cincinnati. On being questioned by his wife, he denied the fact of his meeting the woman, claiming that it was a case of mistaken identity; that the woman he was seen with was an employe of the shop, etc. The wife had then a baby some four months old, and was detained at home most of the time. But she procured her sisters, two of whom lived in Cincinnati, and a constable and his assistant, also living there, to watch the parties. They testify to appellee's meeting with his co-respondent almost daily after working hours for a period of six weeks; taking long walks or street car rides with her, frequently to some park, where they would sit in some secluded spot; that he bought her flowers and candy; that in his walks he selected unfrequented streets or roads; and on more than one occasion was seen to embrace and kiss his co-respondent; that several times the watchers at a certain isolated point would lose trace of them, but at last saw them enter a deserted house, advertised "To Let,"

whereupon the constable arrested appellee on a warrant charging adultery, which had been procured by appellant some weeks before; when arrested, appellee practically admitted his guilt, while the young woman with him cried, and begged that the fact be not exposed to her mother; that thereafter appellee stated more than once that he had a settled aversion toward appellant, using expressions such as that he would like to see her come to poverty and want; that he used towards her epithets harsh and cruel, and endeavored to poison the minds of his children against her; that he loved the co-respondent, and would marry her. On one occasion it was shown that appellee attempted or threatened personal violence toward appellant. On the other hand, there was evidence that appellee had provided liberally for his family, and in the presence of the witnesses treated them with considerate respect. From all the evidence we feel warranted in finding that appellee had a settled aversion to his wife of more than six months' duration before the filing of this suit, and that this fact, and the evidences he afforded her of it, were well calculated to, and in every probability have, permanently destroyed her happiness. The question recurs, was this settled aversion, with its consequences, indicated by the husband in a manner of habitually cruel and inhuman behavior? We may say that occasional fits of temper, pouting, disagreements, or even quarreling, do not necessarily, and, happily for society, do not generally indicate cruel or inhuman conduct within the meaning of the statute. On the other hand, it can not be that only blows, or physical assault, or threats of violence constitute the inhuman and cruel treatment intended to be covered by this statute. In Davis v. Davis, 86 Ky., 36 (9 R., 300) 4 S. W., 822, in an opinion by Judge Lewis, it was held that the husband's re-

quiring the wife, who had a grown daughter by a former marriage living with her, to live in a house with two daughters of the husband, also by a former marriage, and who were of dissolute character, was cruel and inhuman treatment within this section. In Evans v. Evans, supra, failing to support the wife or recognize the marital relation for about a year, coupled with an unfounded charge of adultery against the wife, was held to entitle her to a divorce from bed and board. In Wilson v. Wilson, 18 R., 741, 38 S. W., 140, this court, opinion by Chief Justice Pryor, held that an indolent, thriftless husband, without sense of honor or pride, who allowed his wife to be driven to want by his neglect, and who failed to provide for her, although he might apparently have done so by labor, abandoning her, though not for the statutory period, thus treating her not as a wife, but as one unworthy of that position, "showed a treatment worse than blows, and a course of conduct humiliating to the wife, that drove her to want." It was held that this was such "cruel and inhuman treatment" as satisfied the terms of the statute. In Thornberry v. Thornberry, 2 J. J. Marsh, 322, at a time when our statute on this subject only provided for the divorce in case the husband's treatment to the wife was "so cruel and barbarous and inhuman as actually to endanger her life," the court seemed to consider that there might be treatment of the wife, though not endangering her life, that was morally as cruel, inhuman, or barbarous as personal violence would be. In Shrock v. Shrock, supra, it was held that a charge of various facts importing a charge of illicit intimacy between the defendant and a woman who had been an inmate of his house, "and other reprehensible conduct on his part, particularly in upholding and taking part with

said woman in quarrels with the plaintiff and her daughter," constituted such "cruel and inhuman" treatment as warranted a divorce from bed and board under this statute. Lord Brougham, reviewing a number of cases expounding the law of England and Scotland, declared that any course of conduct, whether with or without actual violence, was cruelty, which made it "utterly impossible for any woman having the feelings of a woman to live with her husband." Paterson v. Paterson, 3 H. L. Cas., 308. In Beall v. Beall, 80 Ky., 678 (4 R., 652), Judge Pryor, for this court, thus stated the rule here: "It should appear that the habitual behavior of the husband to the wife was such as showed a settled aversion to her. Hatred and bad treatment must be the rule of his conduct toward her, and his exhibition of affection for her the exception, in order to entitle the wife to relief upon that ground; but while the husband may now and then manifest such an affection for the wife as to negative the idea that he had lost all regard for her, still, if his cruel and inhuman conduct toward her is such as to destroy permanently her peace and happiness, the wife is entitled to a divorce." The conduct of the husband in this case, as we have stated, indicates pretty clearly that he has a settled aversion to her. In addition to what has been stated, it was shown that he comes to his house once a week since the discovery of his mesalliance, to see his children, generally staying overnight, and then always sleeps with his children in a separate room from his wife, attempting to instill in them a contempt for her, and irreligious ideas and habits. It has not been shown that the husband was guilty of adultery; that is, the act has not been positively proven. Indeed, as in such offenses the participants take every precaution to prevent detection, it is extremely difficult, and often impossible, to prove them

by direct evidence.   Lord Stowell's rule (Loveden v. Loveden, 2 Hagg. Consist., 1, 4 Eng. Ency. R., 461) has been generally adopted in this country.  Said he:  "The only general rule that can be laid down upon the subject is that the circumstances must be such that would lead the guarded discretion of a reasonable and just man to the conclusion." The meeting of these parties, and their conduct previors to the discovery, admits of no other rational explanation than that of committed or contemplated sexual connection. Their conduct when confronted by the wife, the constable and witnesses at the husband's arrest was all but a confession of guilt.   It was not then denied, nor attempted to be explained.  Such conduct, long continued, with other acts showing the husband's estrangement from his wife, and the transfer of his affections and attentions elsewhere, are so inconsistent with the marital vows and duty, and so at war with the Christian sentiment and demands of the society of this day, that it would be unreasonable and illogical to hold that it is not "cruel" nor "inhuman."  It inflicts the most mortifying grief and shame.  It may be doubted whether any blow, even a mortal one, could cause an equal pang to the supplanted wife.  The law does not regard her physical higher than her mental security.  It would shield her heart as it would protect her body.  These facts and circumstances, we hold, both warrant and demand, if the wife asks for it, that she be granted a divorce from the bed and board of her husband.

Since this suit appellee has conveyed his homestead to his sister-in-law for the recited consideration of $1,250. The issues and proof on this branch are not sufficient to yet justify a decision.  It should be further prepared.  The husband, appellee, earns admittedly $17 per week, possibly

more. The children were 11, 9, 7 and 1 years of age, respectively, when the suit was brought.

The judgment is reversed, and the cause remanded with directions to grant the appellant a divorce from bed and board from appellee; to award her the custody of the children, affording appellee reasonable opportunities to visit them and have them visit him; for a judgment decreeing appellant a suitable maintenance, not less than $30 per month, in addition to the use of the house; and for other necessary proceedings not inconsistent herewith.