## Commonwealth v. McClain.

(Decided April 30, 1913.)

### Appeal from Campbell Circuit Court.

Criminal Law—Obtaining Property by False Pretenses—Livery Stable Keepers.—Section 1208, Kentucky Statutes.—One who, by false pretenses, obtains from a liveryman the mere use of a horse and buggy is not guilty, under Section 1208, Kentucky Statutes, of obtaining property by false pretenses.

JAMES GARNETT, Attorney General, M. M. LOGAN, Assistant Attorney General for appellant.

HOWARD M. BENTON for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

The grand jury of Campbell County returned the following indictment against Charles McClain:

"The grand jury of Campbell County, in the name and by the authority of the Commonwealth of Kentucky, accuse Chas. McClain of the crime of unlawfully and feloniously obtaining from another property of value, the subject of larceny, by false pretenses, with intent to commit a fraud, committed as follows, viz: The said Charles McLain, on the ... day of November, 1912, and before the finding of this indictment, in the county aforesaid, did unlawfully, feloniously, knowingly and falsely represent, pretend and state to M. A. Black, who was in the livery business, that he, the said McLain, as a salesman for Leo Stern's Son, to procure the use of a horse and buggy and to hire a horse and buggy for use in carrying said sample case, and that said Leo Stern's Son had directed him, the said McLain to have the bill for said horse and buggy, and the use thereof, made out each week and that said employer Leo Stern's Son said he would pay said bill for said horse and buggy and the use thereof, and that upon said false representations and pretenses so made and for eight days did procure and obtain from said M. A. Black, a horse and buggy and the use thereof, personal property of value of M. A. Black and the subject of larceny, with the fraudulent and felonious intent to so convert said horse and buggy and the use thereof to his, the said McLain's own use, and to permanently deprive said M. A. Black for said period of his

property in said horse and buggy and the use thereof; that said representations that said McLain, as a salesman for Leo Stern's Son, by reason of an accident was unable to carry his sample case, and was authorized by his said employer, Leo Stern's Son to procure the use of a horse and buggy and to hire a horse and buggy for use in carrying said sample case, and that said Leo Stern's Son had directed him to have the bill for the hiring of said horse and buggy and the use thereof made out each week, and that said Leo Stern's Son would pay said bill, were false and were known by said McLain to be false at the time they were made, and were made by said McLain for the purpose of defrauding said Black. That said McLain at the time of the making of said representations was not by reason of an accident unable to carry his sample case, and was not authorized by his said employer Leo Stern's Son to procure the use of a horse and buggy or hire a horse and buggy for use in carrying said sample case, and that said Leo Stern's Son had not directed him to have the bill for the horse and buggy and the use thereof made out each week, and said employer, Leo Stern's Son, did not say he would pay said bill for said horse and buggy or the use thereof. That said Black relied on said false representations and pretenses so made by said McLain and believed same to be true, and that but for said false representations and pretenses so made by said McLain, said Black would not have parted with his said property.

"Against the peace and dignity of the Commonwealth of Kentucky."

The indictment was brought pursuant to Section 1208, Kentucky Statutes, which provides:

"If any person by any false pretense, statement or token, with intention to commit a fraud, obtain from another money. property or other thing which may be the subject of larceny, or if he obtain by any false pretense, statement or token, with like intention, the signature of another to a writing, the false making whereof would be forgery, he shall be confined in the penitentiary not less than one nor more than five years."

It will be observed that the foregoing section makes it an offense to obtain from another money, property or other thing which may be the subject of larceny, by any false pretense, statement or token, with intent to commit a fraud. In States where statutes similar to ours are in force, it is held that to constitute an obtaining of prop-

erty the defendant must in the first place acquire at least a voidable title to the property, that is, the owner must intend to vest him with the title, as distinguished from the custody or possession of the goods; when the defendant is in possession of the property at the time this intent alone will be sufficient, but when the defendant is not already in possession of the goods, he must, in addition to acquiring title, obtain actual possession of the goods, either by himself or his agent. 19 Cyc., 408. In other words, in order to convict a man of obtaining money or goods by false pretenses, it must be proved that they were obtained under such circumstances that the prosecutor meant to part with his right to the property in the thing obtained, and not merely with the possession of it. This is the view taken by the Supreme Court of Iowa, where the language of the statute is substantially the same as ours. The State v. Anderson, 47 Iowa, 142. And in the case of Commonwealth v. Schwartz, 92 Ky., 510, though holding that if the possession has been delivered to the defendant, but not the right of property, and he, after such delivery, obtained the title by false pretenses, he is guilty, under the statute, of obtaining goods by false pretenses, the court, nevertheless, conceded that according to all the authorities, it takes a delivery of the property to deprive the owner of dominion over it, the defendant must obtain both delivery and title before he can be made liable under the statute.

Bishop states the rule as follows:

"One does not 'obtain' a thing by simply acquiring the use of it. This appears to be a fair interpretation of the term; if it were not, still the same result would follow from the consideration that cheating by false pretenses is statutory larceny, and such is the rule in common law larceny. Therefore the statutory cheat is not committed where the mutual understanding of the parties is that only the use or possession of the thing, not the ownership thereof, is to pass." Bishop's New Criminal Law, Section 477.

In the case of Reg. v. Kilham, Law Rep., 1 C. C., 261, Kilham was convicted of getting by false pretense the use of a horse from a livery stable for a day, and the conviction was quashed. In delivering the opinion of the court, Chief Justice Bovill said:

"The word 'obtain' in this section, does not mean obtain the loan of, but obtain the property in, any chattel, &c. This is to some extent indicated by the proviso that

if it be proved that the person indicted obtained the property in such manner as to amount in law to larceny, he shall not by reason thereof be entitled to be acquitted; but it is made more clear by referring to the earlier statute from which the language of Sec. 88 is adopted. 7 and 8 Geo., 4, c., 29, Sec. 53, recites that 'a failure of justice frequently arises from the subtle distinction between larceny and fraud,' and for remedy thereof enacts that 'if any person shall, by any false pretense, obtain,' &c. The subtle distinction which the statute was intended to remedy was this: that if a person by fraud induced another to part with the possession only of goods and converted them to his own use, this was larceny; while if he induced another by fraud to part with the property in the goods as well as the possession, this was not larceny. But to constitute an obtaining by false pretenses, it is equally essential as in larceny that there shall be an intention to deprive the owner wholly of his property. And this intention did not exist in the case before us. In support of the conviction, the case of Reg. v. Boulton, 1 Den. C. C. 508, 19 Law J. n. s., M. C., 67, was referred to. There the prisoner was indicted for obtaining by false pretenses a railway ticket, with intent to defraud the company. It was held that the prisoner was rightly convicted, though the ticket had to be given up at the end of the journey. The reasons for this decision do not very clearly appear, but it may be distinguished from the present case in this respect: that the prisoner, by using the ticket for the purpose of traveling on the railway, entirely converted it to his own use for the only purpose for which it was capable of being applied. In this case the prisoner never intended to deprive the prosecutor of the horse or the property in it, or to appropriate it to himself, but only intended to obtain the use of the horse for a limited time."

There seems to be an exception to the general rule that the word "obtain" does not mean obtain the loan of, where the thing loaned is actually consumed in its use, as in the case of the railroad ticket referred to above, or where there is a loan of money, for in the latter case the prosecutor does not expect to receive back the identical money loaned, and he therefore parts with the property therein. State v. Ash, 44 Kas., 84, 24 Pac., 72; Com. v. Coe, 115 Mass., 481; People v. Oscar, 105 Mich., 704, 63 N. W., 971; Rex v. Crossley, 2 Lew. c. c., 144, 2 M. & Rob., 17; Com v. Schwartz, *supra.*

In the present case there was simply a hiring or an obtaining of credit by false pretenses. Our statute requires that the thing obtained shall be the subject of larceny. Defendant did not "obtain" the horse and buggy within the meaning of the statute. He obtained merely the use of it. The use of property is not the subject of larceny. In England and in some of the States, there are statutes against obtaining credit by false pretenses. The mere fact that other statutes were enacted to cover such a case tends to show that such an offense is not covered by statutes similar to the one under consideration.

Judgment affirmed.