## Bordes v. Bordes.

(Decided Feb. 18, 1938.)

WILLIAMS & DENNEY for appellant.
ROBERT B. BIRD for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The parties to this action at the time it was filed in the Rockcastle circuit court on August 6, 1936, were husband and wife; the appellant and defendant below being the husband, and the appellee and plaintiff below the wife. She filed the petition against her husband seeking a divorce from their bonds of matrimony, and alimony for her support, upon the ground that defendant had failed to provide for her or furnish to her a home in which to live, or to contribute any substantial sum to her support; and that he "had behaved toward her in

such a cruel manner as to indicate a settled aversion to her and to destroy permanently her peace and happiness.'' His answer was a denial of the averments of the petition, and upon final submission the court granted its prayer and decreed an absolute divorce to plaintiff and allowed her as against her husband the sum of $25 per month as alimony. To reverse the alimony judgment defendant prosecutes this appeal.

The parties were married at Erlanger, Ky., on January 22, 1935. At that time plaintiff was about 20 years of age, while defendant was some older. He then and continuously thereafter held the place of state patrolman on a salary at the time of his marriage of $75 per month but which was later increased to $100 per month. They had no children and defendant has no dependents, or, if any, the fact is not manifested by this record. Plaintiff has no property whatever, except her clothing and some other small personal belongings, nor does she have any means of support other than through her own efforts. The first month or two after their marriage they lived with plaintiff's brother in a suburb of Cincinnati, Ohio. From thence they moved to Brodhead, Ky., to the home of plaintiff's parents. After a month or so they moved to Lexington, Ky., and remained there about the same length of time, and then returned to plaintiff's parents for a short while, and then moved in the home of defendant's brother at Crab Orchard, Ky.

So that, during his married life at no time did defendant provide plaintiff with a home over which she might preside and which she could direct and manage. During all of their married life defendant was away from the temporary abode of the couple a large part of the time on the pretense of discharging his duties as state patrolman. But the evidence shows that on occasions he was not engaged in any such duties during his absence, and that he devoted part of his time entertaining other ladies, but which conduct on his part was not constant, according to the record. At any rate, the wife became aware of it, but she does not seem to have become enraged, nor does the proof show that she even upbraided her husband for doing so. Also, soon after their marriage defendant exhibited the habit of drinking, which was very displeasing to plaintiff, and it, with perhaps the knowledge of his disposition to associate

with other women, would cause her to weep, but it does not appear to have aroused anger on her part.

Defendant was more or less parsimonious in his furnishing either money or clothing to his wife, and when he was away supposedly attending to his official duties (which was more than half the time) she would be alone, except for the company of the people with whom she was residing. Of course, she grew more or less lonely in that situation. Therefore, inasmuch as her husband was away the larger part of the time, she concluded to attend the State Normal School in Richmond, Ky., for the double purpose of finishing her education, and to better equip herself for teaching school whereby she could increase the small income of the couple. Her husband objected to her entering school, but she insisted that, since he was away most of the time—and inasmuch as Richmond was in the same general vicinity where they had theretofore resided—it would be as convenient and possibly as economical for her to remain at Richmond and attend school as it would be for her to continue to reside with members of his and her family as they had theretofore done. Consequently she entered the school at the beginning of its fall term in 1935. The tuition was small, as was also the amount of her board, which was at first in a dormitory, but later she procured a room in a residence in the city of Richmond where her husband could visit her more conveniently, as she thought. He did visit her occasionally at first, but they became more infrequent and finally practically ceased.

The funds for plaintiff's original entrance into the school were furnished by her brother; however, defendant claims to have advanced his wife small amounts, but for only a few times, amounting in the aggregate to only a fractional part of her necessary expenses. Plaintiff also testified that following the marriage—and before and possibly after she entered school—defendant would talk on occasions harshly and at one time tried to strike her with a pistol, but which she in some manner warded off. The evidence uncontradictedly shows that plaintiff was of a mild disposition, tolerant towards her husband, and with an ambition for both him and herself to succeed, and counsel for the husband on this appeal makes this statement in his brief: ''Since the defendant filed no counterclaim in this action, he does not contend

that he is entitled to a divorce, or of any moral deficiency upon the part of the plaintiff.''

Under the facts as so generally outlined, it is strongly insisted by learned counsel for defendant that, although we cannot reverse the divorce judgment in favor of plaintiff, yet we have the authority and it is our duty—under the prevailing rule of practice, as contended—to look to the evidence in order to ascertain whether or not the grounds of divorce were proven, and if not done, then no alimony should be allowed. But the cases cited and relied on in support of that proposition do not sustain it as so sweepingly contended for, nor are their facts analogous to those found in this record. The facts of this case are almost on all fours with those found in the case of Green v. Green, 152 Ky. 486, 153 S. W. 775, 776, and in which the husband made the identical contention that defendant's counsel make in this case. However, we overruled it and sustained the alimony judgment there in contest, and in stating our conclusion we said: ''Although the judgment of the circuit court granting a divorce to the wife is not reviewable here, appellant contends that the evidence upon which the divorce was granted appellee should be considered on her application for alimony; that under the evidence she was not entitled to a divorce, and, therefore is not entitled to alimony. This, however, is not the rule in such cases, for although the wife be in fault yet, if there be equal or some fault on the part of the husband, the wife, having no estate of her own, may have alimony, even where the divorce is given to the husband. Pore v. Pore, 50 S. W. 681, 20 Ky. Law Rep. 1980.'' Later in the opinion we approved a statement taken from the case of Griffin v. Griffin, 8 B. Mon. 120, to this effect: ''The law, with due consideration for the frailty of human nature, does not require the conduct of the wife to be entirely blameless to entitle her to alimony.''

Elsewhere in the opinion—and in substantiation of the conclusions therein reached—we said: ''In questions relating to alimony the court is not called upon to compare these imperfect sympathies so as to determine, with certainty, which was most at fault; but, where there is no moral delinquency upon the wife's part, it is a sufficient ground for giving her alimony that the husband, being the support of the family, was a substantial

participant in the shortcomings which led to the separation. Lacey v. Lacey, 95 Ky. 110, 23 S. W. 673, 15 Ky. Law Rep. 439; Alderson v. Alderson, 113 Ky. 830, 69 S. W. 700, 24 Ky. Law Rep. 595; Zumbiel v. Zumbiel, 113 Ky. 841, 69 S. W. 708, 24 Ky. Law Rep. 590; Clubb v. Clubb, 63 S. W. 587, 23 Ky. Law Rep. 650.'' Our conclusions upon the question involved as therein adopted was approved in the later cases of Ahrns v. Ahrns, 160 Ky. 342, 169 S. W. 720; Kelly v. Kelly, 183 Ky. 172, 209 S. W. 335; Hoffman v. Hoffman, 190 Ky. 13, 226 S. W. 119; Yeager v. Yeager, 197 Ky. 353, 247 S. W. 5; Asbury v. Asbury, 221 Ky. 744, 299 S. W. 723; Stiles v. Stiles, 224 Ky. 526, 6 S. W. (2d) 679; Miller v. Miller, 229 Ky. 436, 17 S. W. (2d) 412; Moore v. Moore, 231 Ky. 829, 22 S. W. (2d) 251; and others found in those opinions. So that, there being no fault proven against plaintiff in this case, nor any moral delinquency charged or attempted to be proven, and she being entirely without means of support, the court correctly held it to be the duty of the husband to contribute thereto, although the grounds of divorce stated in the petition may have been but scantily proven, if proven at all.

However, we are not prepared to appraise the testimony in this case as exculpating defendant from all blame. It does do so as to plaintiff, unless it may be said that she was blamable for desiring to and actually entering into the school at Richmond as a student, but which we are convinced is altogether unsustainable under the facts of this case. The marital status imposes many additional duties upon the contracting parties toward each other. The wife, and especially if she be young, desires a home over which she can preside, and which may occupy her time and attention in the management of it, and wherein she could rearrange, daily if she wished, the furniture and the pictures on the walls, while singing Payne's immortal song "Home Sweet Home," even though hers might be a rented one. She should also receive affection, and considerate treatment from the husband, as well as encouragement in laudable ambitions. The first provision mentioned was altogether omitted by defendant, and the other stated duties were but partially extended. Plaintiff desired to equip herself so as to become better enabled to assist her husband in acquiring the necessary funds for their comfortable and mutual support, as well as to gratify a desire

to enlarge her education, but he strenuously opposed such laudable ambition. He not only objected to it, but appears to have grown sullen and morose, when he should have enthusiastically approved it in the circumstances hereinbefore outlined, i. e., no settled home, no children to look after, loneliness of the wife when the husband was necessarily away which was a considerable part of the time, and when it could be done at but slight if any increased expense with the wife still remaining in the same general territory from which defendant discharged his official duties. That attitude on his part, plus the other delinquencies hereinbefore related, do not acquit him of being entirely without fault. The facts bring the case squarely within the doctrine announced in the Green and following opinions, supra.

Wherefore, for the reasons stated, the judgment is affirmed.