## Rice v. Rice.

(Decided October 19, 1915.)

Appeal from Johnson Circuit Court.

Divorce—Alimony.—The judgment granted a divorce to the husband and denied alimony to the wife. Evidence examined on the wife's appeal. Occasional shows of temper and petulant and rude conduct, the wife being equally in fault, held not to show such danger of bodily harm and cruelty in him as the statute contemplates and affords relief against.

D. J. WHEELER and JOHN W. WHEELER for appellant.

FOGG & KIRK for appellee.

OPINION OF THE COURT BY JUDGE NUNN.—Affirming.

The court granted the husband a divorce on his petition. The wife appeals from so much of the judgment as denied her right to alimony. The husband brought the action, seeking a divorce on the statutory ground of abandonment. By her answer and counterclaim she admitted the abandonment, but undertook to justify it by the plea that "he was eccentric and seemed not to care for her; that he absolutely refused to provide for her girl, Mamie, by her former marriage, and refused to furnish her clothing." On these grounds she asked for divorce and alimony in the sum of $1,500. By an amendment she restates her grievances, that is, paraphrases them in words of the statute. Thus she makes it appear that for more than six months prior to her abandonment of him he habitually behaved toward her in such inhuman and cruel manner as to indicate a settled aversion to her and destroy permanently her peace and happiness, and such cruel attempt to injure her as indicated an outrageous temper in him and probable danger to her life or great bodily injury if she longer remained with him. The testimony given in her behalf tends to establish the allegations of her original pleading rather than the amendment.

They were beyond middle age when they married and each had a daughter by a former marriage who became a member of the family. No children were born to them. He had property worth about $4,000.00. Her property was considerable, although not worth quite so much. It con-

sisted of one house and lot and a two-thirds interest in another, and some personal property. Her daughter had more than $900 in cash, and drew a pension from the United States Government because her deceased father served in the Union Army. The marriage occurred in 1904. She left him in about a year. They lived apart for several months; then they were reconciled and lived together until September, 1911. The husband and wife testified concerning the alleged "cruel and inhuman treatment." Whatever errors there may have been in the admission of testimony, they were participated in by both parties. These questions are not pressed in the briefs, and are not passed upon. They admitted numerous quarrels and disagreements, but they must have been of little consequence, as measured by the statute, for, except the first separation, even their next door neighbors knew nothing of discord between them. In fact, all the neighbors testified that so far as they knew Mr. and Mrs. Rice were kind and affectionate toward each other. The chief cause of difference between them was his persistent refusal to pay for her daughter's wearing apparel. But it is undenied that when they were reconciled, after the first separation, Mrs. Rice, who was her guardian, agreed that such expense should be paid by the daughter. It is claimed that he was rude in his conduct toward her daughter's beaux—that he objected to young men keeping company with her at his home. Mr. Rice testified that he never objected to young men coming to see her. He did object, however, to the late hours they kept. He said that 9 or 10 o'clock was his bed time, and they disturbed him by remaining longer, and he told them so.

The only evidence that his unkindness preponderated came from Mrs. Rice and her daughter, but the testimony of Mr. Rice, his daughter and five neighbors tipped the scales the other way. Mrs. Rice admits that she too "quarreled to beat the band sometimes," and she has convinced us that she never was in danger. The only threat in the case is where she says at one time they were fussing about how best to make the cow stand for milking and whether her feed meal should be sifted. Finally, as she relates, "He drawed a chair on me. He didn't strike me. I told him I dared him to, and he didn't hit me."

When she abandoned him, and repeatedly up to the bringing of the suit, Mr. Rice made efforts, in person

and by friends, to persuade Mrs. Rice to return and live with him and bring her daughter.

The statute allows a divorce to the wife on the grounds alleged in her amendment, but this relief is conditioned upon her not being in like fault. Accepting her theory of the case, it only appears that he was petulant and rude, with occasional shows of temper. If it could be said that Mrs. Rice was herself free of these faults, still, in our opinion, she has not shown such danger of bodily harm or cruelty in him as the statute contemplates relief against.

On the whole case we concur with the lower court in rejecting her claim for alimony, and the judgment is, therefore, affirmed.