## Yeager v. Yeager.

(Decided January 12, 1923.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Divorce—Alimony.—Where the husband was improperly granted a divorce and the wife had no property of her own, a denial of alimony to her will be reversed although the divorce cannot be disturbed.

2. Divorce—Abandonment—When Husband Not Entitled to Upon Ground of.—Husband held not to have been entitled to divorce upon ground of one year's abandonment where, when his wife left him without apparent reason, he neither protested nor asked her why she was leaving, and thereafter refused to answer her letters seeking a reconciliation within the year.

3. Divorce—Alimony.—Wife not entitled to alimony amounting to one-third of the value of husband's estate, where the marriage was the second for each, they had lived together but ten months, she had no part in its accumulation, and was not without fault for the separation.

4. Divorce—Alimony.—Under such and other relevant evidence, alimony fixed at $6,000.00, the value of the husband's estate being $45,000.00.

MORTON K. YONTS and H. M. DENTON for appellant.

A. M. MARRETT, for appellee.

Opinion of the Court by Judge Clarke—Reversing.

The appellee instituted this action for divorce against appellant on August 7, 1919, upon the ground of an alleged one year's abandonment by her without fault upon his part. By answer and counterclaim, appellant denied that she abandoned the appellee without fault upon his part or at all, and alleged that when she left his home on August 5, 1918, he compelled and required her to leave; that for more than six months prior thereto he habitually behaved toward her in such a cruel and inhuman manner as indicated a settled aversion to her and to destroy permanently her peace and happiness, because of which she asked for a divorce and alimony.

A reply completed the issues, and upon trial the chancellor granted appellee a divorce, dismissed appellant's counterclaim, denied her alimony, and allowed her attorneys for their services $50.00 to be taxed as costs and paid by appellee.

Upon this appeal from that judgment she insists the court erred in granting the divorce to appellee and refusing it to her, in denying her alimony, and in the amount of the fee allowed her attorneys.

The judgment for divorce cannot be reversed, but if appellee was not entitled thereto, appellant, who has no property of her own, was entitled to alimony regardless of whether she proved a right in herself to a divorce. Green v. Green, 152 Ky. 486, 153 S. W. 775, and cases therein cited.

Hence we need consider only the evidence with reference to her alleged abandonment of him for a year without fault by him to determine her right of alimony, although this necessarily involves his conduct toward her, which she insists was so cruel and inhuman as to entitle her to a divorce.

According to his own evidence and entirely disregarding all that was introduced by the appellant, it is perfectly clear that he was in fault in a measure at least for her leaving, and wholly so for her remaining away. After he had testified that he had made every provision for her comfort and always treated her kindly and affectionately, that they had never had a quarrel during the entire time they were married, and without charging her with improper conduct of any kind, he stated:

"No, I did not cause her to leave me on August 5, 1918, or at any time. When she came to me on August 5, 1918, and told me she was going to leave me, I was struck dumb; I couldn't answer her; we had never had a cross word of any kind; she had never shown the slightest discontent; if she had I would certainly have remedied anything that displeased her; there was absolutely nothing that I could say—and the shock has nearly got the best of me. On the morning of August 5, 1918, I was in the bathroom getting dressed; she came in holding in her hand a plain gold ring that belonged to me, and she said, 'Take this,' and I said, 'What is it?' She said, 'Your ring; tell Frances to get up and get breakfast; I'm going to pack my valise and leave.' I was so terribly shocked that I couldn't answer her. I went on out and fed the horse and milked the cows, and my daughter came out to me and asked me what in the world was the matter, and I told her I surely did not know, and then she went and asked my wife what was the matter, and my wife told her she had made up her mind to leave and she was going to leave, and gave as her reason for leaving that there was too much work there for her."

As will be noticed, there was not one word of protest from the husband when without apparent reason his wife announced that she was going to leave him, and he didn't even ask her why, although he said he had never given her cause, but proceeded to milk the cows and feed his horse. Surely a husband who acts thus under such circumstances has not done his full duty as a husband or even as a citizen. If so the marriage relationship carries but slight, if any, obligation to forbear, condone and heal trivial differences and misunderstandings. But this is not all; appellee hitched up his horse, drove appellant to a neighbor's, gave her $5.00 and left her without a word of regret upon his part or of explanation by her. Nor is this by any means the whole story of his attitude toward his wife and the separation.

He admitted receipt of and filed with his deposition two letters from her which he never answered or noticed in any way, one in February and the other in June of 1919, and he further admitted, as does his daughter, that the latter received and signed the receipt for a third one written on August 5, 1919, and addressed to him by registered mail and which the daughter did not deliver to him but destroyed, because, as she says, he was sick at the time and she did not want to worry or annoy him.

The two letters filed with his evidence are as follows:

"510 E. Spring Street,
New Albany, Indiana.

"Mr. George W. Yeager.

"I want to ask you·to please forgive me for anything I have ever done or said that has given you any pain or sorrow. And I pray that God in His love and mercy will bless you and your dear children. It makes me so unhappy to think at your being mad at me.

MARY A. YEAGER."

The envelope containing the above letter is postmarked New Albany, Ind., Feb. 13, 1919, 7:30 a. m.

"510 E. Spring Street,
New Albany, Indiana.

June 2nd, 1919.

"My Dear Husband:

"You will please pardon me if I annoy you, but as I cannot keep you off my mind even though I try as hard as I may, I feel that it is necessary that in order to have any satisfaction spiritually I must appeal to you again for forgiveness, for it is written if thy brother has aught against thee go and be reconciled to him. And I earnestly plead with you to come over and see me or meet me some place so as I may have a private interview with you so as we may make right any wrong that has come between us. I feel if I could see you and explain how I feel toward you and your family, you would think differently of me.

"Please answer this and let me know how you feel toward me anyway, even though you should not care to see me, then I will feel satisfied that there is no use trying any longer. I cannot help but think that if you ever loved me as you said you did, you still love me a little. So please have a heart and answer me in some way or other.

"Yours affectionately,
MRS. YEAGER."

The envelope containing the above letter is postmarked Louisville, Ky., June 3, 1919, 11 a. m.

These letters show in unmistakable terms that the wife was willing and anxious to make amends for anything she had ever done inconsistent with her duties as a wife, and to effect a reconciliation. These petitions for

a reconciliation the appellee treated with silent contempt, and he thereby made it perfectly plain that he did not desire and was unwilling that she should return as his wife to his home, as was evidently her desire and purpose if but assured of a welcome, and necessarily assumed full responsibility for a continued separation where, as here, there is no claim of any misconduct upon her part other than her leaving originally.

Is it not perfectly evident that if he had but said the word she would have returned to him at any time after she left? And who can doubt that she would not have left in the first place if he had but spoken kindly to her and sought to ascertain why she was leaving, and disabuse her mind of whatever misunderstanding was causing her to leave? Certainly she had not "abandoned" him as that word is used as a ground for divorce when she wrote those letters, but his actions throughout show plainly that he had abandoned her. We therefore confidently assert that from his evidence alone, it is apparent that he did not prove that she had abandoned him for a year without fault upon his part, as was necessary to entitle him to a divorce, and that the fault was as much or more his than hers, if not wholly his that the separation continued for that period, if we concede she left him without sufficient or any reason for doing so, and it is true, we think, she did not have sufficient reason therefor.

The evidence for the wife is to the effect that for some time, and almost from the beginning of their married life, he at times, and without any apparent reason, would refuse to speak to her or answer her questions; that he never went any place with her, ridiculed her religion, and did not furnish her such clothing and money as she needed. While this evidence for her is contradicted by more witnesses than those who sustain it, the conduct of the appellee at the time of the separation and thereafter was such as indicated such indifference toward his wife as makes it hard to believe that he had treated her as considerately theretofore as the testimony of his witnesses indicates.

We have never held, as have some courts, that it is the duty of the husband, in order to be without a fault for a separation, to seek a reconciliation with his wife, but we have in numerous cases considered his action in seeking or refusing a reconciliation as bearing upon the question of whether or not he was in fault therefor, and such cases

in this court, in our judgment, afford ample authority for holding that upon his own as well as all of the evidence, appellee was not entirely without fault for the separation, and that the fault was all his that it continued for such a length of time as to constitute a cause for divorce. See Finley v. Finley, 9 Dana 52; Eppling v. Eppling, 1 Bush. 75; Beckett v. Beckett, 14 B. Mon, 375; Adair v. Adair, 31 Ky. L. R. 956; Polk v. Polk, 161 Ky. 104; Rice v. Rice, 166 Ky. 289, 179 S. W. 200; Mayes v. Mayes, 115 S. W. 717.

We are therefore clearly of the opinion that the chancellor erred in granting the divorce to appellee and denying to appellant any alimony, even if we consider only appellee's evidence, and in this view we need not consider objections urged to the competency of some of appellant's proof.

The evidence shows without contradiction that appellee owned real estate worth at least $45,000.00, and that his net income therefrom is $1,656.00 a year, aside from what he makes upon the 6½ acre tract upon which he resides.

Counsel for appellant insist that she should have been allowed, in a lump sum, an amount equal to one-third of the value of appellee's real estate, and cases are cited in support of the contention where alimony has been fixed upon this basis, but in none of them were the facts. anything like those here which must be taken into consideration in determining the amount that should be allowed in one sum as alimony, as in our judgment it should be allowed in this case.

We have frequently held that in fixing the amount of alimony the court should consider the amount of the husband's estate, his income and earning capacity, his age, health and ability to labor, the age, health and station of the wife, the particular cause of the.divorce, the relative responsibility of the parties therefor, whether or not the wife has helped in accumulating the husband's property, and all other relevant circumstances. Shehan v. Shehan, 152 Ky. 191, 153 S. W. 243; Burns v. Burns, 173 Ky. 105, 190 S. W. 683, and the many cases cited therein.

This was a second marriage for both parties; the wife is 45 and the husband 60 years of age; they lived together only about ten months, and she had no part in the accumulation of any of his estate. He is unable to earn a living by labor, and while her health is not the best, she

was accustomed to work for a living before her marriage to appellee and since her separation from him has been earning from $8.00 to $17.00 a week. Appellant's widowed daughter and her two children of tender age live with him, and are dependent upon him for their support, and his income cannot be greatly in excess of his own requirements.

Neither party is wholly without fault for the separation, and upon the consideration of all these facts, it is clear that the appellant is not entitled to anything like a third of appellee's estate, and we have finally composed our individual opinions by agreement that under all the facts and circumstances in this case, appellant is entitled to alimony in the sum of $6,000.00, and that her attorneys for their services should be allowed the sum of $250.00, to be taxed as costs and paid by the appellee.

Wherefore, the judgment, except in so far as it grants the divorce, is reversed, and the cause remanded with directions to enter a judgment for appellant as herein indicated.