# Riley v. Riley et al.

(Decided February 18, 1930.)

FAULKNER & FAULKNER for appellant.

J. T. BOWLING for appellees.

Opinion of the Court by Commissioner Stanley—Reversing.

The home of Allen Riley and his wife, Armilda Riley, with its contents, was destroyed by fire on September 26, 1928. Two days later Mrs. Riley went to her daughter's home in Hamilton, Ohio. On November 20, 1928, a suit for divorce was filed in the Perry circuit court by the husband on the grounds of abandonment and "such lewd and lascivious conduct as proved her unchaste and untrue to her marital vows." The verified petition alleged in sufficient manner that the defendant was a nonresident of Kentucky, and that her post office was unknown. A warning order was made warning her to appear and answer at the first day of the February term, 1929. But on the fifty-eighth day of the November term of court (which was January 28, 1929) the defendant filed an answer traversing the allegations of the petition and giving the circumstances of her going to Ohio and alleging facts hereinafter stated. A subsequent motion for temporary allowance and a sufficient sum to prepare her defense was overruled. On the twelfth day of the February term (March 2d), an amended answer was filed in which the defendant charged that the suit was instituted at the instance of plaintiff's children by a former marriage, and was being maintained by them for the purpose of preventing her sharing in his estate as his

widow; that, since its filing, the plaintiff had been in a distant state, and had taken no part in its preparation or prosecution. She alleged her inability to maintain herself, and prayed for a reasonable sum as alimony, counsel fees, and costs.

It appears that Mr. Riley was about 70 and Mrs. Riley about 60 years of age, and they had been married a little over 5 years. Some depositions were taken in behalf of the plaintiff on February 14th and filed on the 20th, and another was filed on March 2d, which had been taken before answer had been filed. Two depositions, taken in behalf of the defendant on February 28th were filed on March 14th, as was also the plaintiff's reply. On the same day judgment was rendered granting a divorce to the plaintiff, and the case was stricken from the docket. This judgment, however, was not entered until the 15th, on which day the court adjourned for the term.

The evidence submitted to sustain the cause of action was principally supplied by the husband's daughter and daughter-in-law and their relatives, and it only showed that about a year before Mrs. Riley had said: "They had not treated her right and that she was going to quit him;" that she had a high temper, was hard to please, sometimes pouted, and sometimes went into another room to sleep, and sometimes went off to her neighbor's and left her husband at home. It was specifically said that she went to the home of Mary McIntosh where "a great many others gathered for a big time." Mrs. McIntosh had a boy of whom Mr. Riley was jealous. Mrs. Riley went once to a candy pulling at another neighbor's when this boy was present. The last two statements were admitted to be hearsay. When she went to Ohio, she told witnesses the old man wanted her to come back in 2 weeks; that maybe, she would and maybe she would stay 2 months, and maybe not come back at all, for she had nothing to come back to, and it was the best time she had to go to her children. That was the entire evidence introduced in behalf of the plaintiff.

The defendant proved that Mr. Riley had asked his sister to write to his wife to remain in Hamilton, as he would be there for Thanksgiving. He did go there about that time, which was only a week after the filing of this suit. He became sick at his daughter's home in Hamilton, and his wife stayed with him about half the time, until she herself became ill at her daughter's who was

living in the same city. This witness, who was a great-nephew of plaintiff, was apparently on intimate terms with both parties, and he stated that Mr. Riley at no time mentioned the suit, and that Mrs. Riley learned of its filing in the latter part of December through a chance remark by a visitor from Perry county. She returned home in a week or 10 days thereafter. While in Hamilton Mrs. Riley purchased a stove and some other household articles which were shipped back to Kentucky. When she returned, she moved this and some other furniture into a little house on her husband's farm, and was preparing to move into it to live when a son and son-in-law of her husband took them out, locked them in the barn and partially demolished the house so it could not be occupied. This was all the evidence submitted to the court.

It is difficult to conceive of a judgment of divorce being granted without any evidence whatever authorizing it and on such a state of facts. There was, of course, no abandonment, and not even a suspicion of any lewd or lascivious conduct on the part of this 60 year old woman.

Mr. Riley died a few days after the rendition of the judgment; and on the third day of the next succeeding term (June 12th), pursuant to ample notice, the defendant, under the provisions of subsections 3 and 4 of section 518 of the Civil Code of Practice, filed a motion to set aside the judgment because it had been procured by fraud and had been prematurely submitted. She also filed a motion for a revivor against the administrator of Allen Riley's estate and his children as his heirs at law. In support of these motions, affidavits were filed showing that Mr. Riley had said that he did not file any suit for divorce against his wife, and further that one of his sons, who had actively participated in the suit, had stated at his father's funeral that his father had known nothing about it, but that he (himself) had instituted the suit. Also that her counsel was not present at the taking of one of the depositions filed for plaintiff; that plaintiff's counsel had stated he desired the case tried at that term, because his client was ill and not expected to live; that he (defendant's counsel) had no knowledge of the submission and decision of the case until the next day, when he made a motion for a temporary allowance, and was then informed of it. It was further pointed out that the case did not stand for trial at the time, and stated that

defendant desired and was prepared to take additional proof in her behalf. No response was filed to these motions, but the court overruled them, from which order this appeal is prosecuted.

As indicated, there was no evidence whatever justifying the judgment granting the divorce, and the court committed error in rendering it. The defendant's counterclaim for alimony was ignored. The case did not stand for trial, since it was filed within less than 30 days of the term, and the judgment was rendered the very next day after the issues were completed. Section 367a-5, Civil Code of Practice; Eastern State Hospital v. Cottle, 201 Ky. 377, 256 S. W. 1101.

The defendant did all that could have been done when within the time allowed by law she asked that the judgment be set aside (section 519, Civil Code of Practice), and, since the plaintiff, her adversary, had died, that the case be revived in order that she might have a hearing on her claim. We cannot escape the conclusion from this record that the suit was instigated and prosecuted by the plaintiff's family in anticipation of his early death, and for no other purpose than to divest his wife of her rights in his estate. When this unconscionable situation was brought to the attention of the trial court, as well as the premature submission of the case, he should have sustained the motions in so far as the judgment affected the defendant's claim. It is not necessary to rule on the right to have the divorce decree set aside on the ground of fraud.

There can be no dispute that, where the husband was improperly granted a divorce, and the wife was entitled to maintenance, the judgment, is so far as it deprives her of that right, may be and should be reversed, although the improper decree of divorce cannot be disturbed. Caudill v. Caudill, 172 Ky. 560, 189 S. W. 431; Yeager v. Yeager, 197 Ky. 353, 247 S. W. 5. The death of the husband does not abate this right of the wife, and this court has jurisdiction of an appeal over a judgment revived against the husband's representatives for the reasons given in Wagner v. Wagner's Adm'x, 188 Ky. 692, 223 S. W. 1011. See, also, as of interest in connection with an attack on a judgment of divorce obtained by fraud and recovery of the widow's property rights. Newcomb v. Newcomb, 76 Ky. (13 Bush) 544, 26 Am. Rep. 222.

A somewhat similar condition was presented in Wesley v. Wesley, 181 Ky. 135, 204 S. W. 165, where it is pointed out that the charge of lewdness cannot be substantiated by a mere suspicion or by proof of circumstances harmless in themselves and not indicating culpability. Two other familiar rules pertinent to this case were noted in that opinion, namely, that an unfounded charge of this nature, not made in good faith, is cruel treatment on the part of the husband, and that cohabitation thereafter is under the statutes a condonation of any offense even where it was proved. It is further declared that, where the divorce from the bonds of matrimony has been wrongfully granted the husband, and the wife has been deprived of her dower or distributable share in his estate in the event of his death, the value of that right will necessarily be taken into consideration in determining the sum to which she is entitled as alimony. See, also, Smith v. Smith, 181 Ky. 55, 203 S. W. 884; Yeager v. Yeager, supra; Lewis v. Lewis, 224 Ky. 18, 4 S. W. (2d) 1106. Even if Allen Riley did authorize the filing of this suit, when he resumed the marital relation pending the action, he will be held to have abandoned it. Miller v. Miller, 141 Ky. 681, 133 S. W. 588.

The judgment appealed from will be reversed, with directions to redocket and revive the case, and, if the parties desire, the court will hear evidence with respect to the amount of alimony and attorney's fee which should properly be allowed the appellant. Unless conditions should develop not shown in this record, it would appear that Mrs. Riley should be allowed an amount equal to her distributable share in the estate as the widow of Allen Riley, with no part of the cost of this litigation, including her attorneys' fee, chargeable against her.

Judgment reversed.