## Burns v. Burns.

(Decided Dec. 18, 1934.)

JOHN L. DIXON for appellant.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
J. M. MUNCY for appellee.

Affirming.

Green Burns who was plaintiff below is appealing from a judgment in favor of Sophia Burns for $250 as alimony recovered on a counterclaim and her costs, including attorney's fees of $75 and adjudging her a lien on a tract of land owned by appellant. Appellant instituted an action seeking a divorce from appellee on the grounds of adultery and such lewd and lascivious conduct as proved her to be unchaste.

By answer and counterclaim, appellee denied the allegations of the petition and sought a divorce from appellant on the ground of cruel and inhuman treatment. She further alleged that by their joint efforts, skill, and labor she and her husband accumulated money with which to buy a tract of land worth $1,000 and personal property listed in the answer of a value of about $800. She asked for custody of the five children which had been born to her and her husband and for alimony in the sum of $2,000. She made the necessary allegations and caused a general order of attachment to be issued and levied upon plaintiff's property.

On final hearing it was adjudged by the chancellor that plaintiff's petition be dismissed and that defendant be granted an absolute divorce. It was further adjudged that she recover alimony and costs as above indicated; that her attachment be sustained; and that she have a lien on appellant's land to secure payment of the sum. She was awarded the custody of their youngest child, a girl, and appellant was given the custody of the four older children, all of whom are boys.

While there is no right of appeal so far as the granting of the divorce is concerned, this court will consider the evidence as bearing on the question of alimony and property rights.

As disclosed by the record, these parties married in 1919 and thereafter appellant was indicted and convicted of the murder of appellee's father. Prior to this incarceration, two children were born to them. Appellant spent four or five years in the penitentiary and it is not clear from the record whether or not he was pardoned, but it does appear that appellee used every ef-

fort and spent money which she inherited from her father in an attempt to secure her husband's pardon or release. After his return from prison and before their separation, three more children were born to them. To sustain the ground for divorce alleged in his petition, appellant was forced to, or at least did resort to evidence of members of his own family, except as to one isolated incident as will later appear.

William Burns, brother of appellant, testified that he had illicit intercourse with appellee while appellant was in the penitentiary. Appellant's father and one of his sisters testified to having seen appellee in bed with William Burns. Pleasie Burns, brother of appellant, who was seventeen years of age at the time he gave his deposition, testified that he had illicit relations with appellee and was detected in the act by appellant. This he states occurred at appellant's home and in a room where he, appellant, and appellee were occupying different beds. Willis Sizemore testified that on one occasion he passed by the home of appellant while the latter was in the penitentiary and saw a man sitting in appellee's lap. According to his evidence, he was passing along a road 100 yards or more from the house. Others testified that it was 250 yards from the house. William Burns testified that he was the man sitting in her lap at the time. Dee Collins, who married a sister of appellant, testified that he had illicit intercourse with appellee after she and her husband separated. This according to his evidence occurred in the woods a short distance from the road about three-quarters of a mile from appellee's home.

Appellee denied all these accusations made against her. Eli Burns, appellant's father, William Burns, and Dee Collins were impeached by a number of witnesses who testified that their reputation as to truth, veracity, and morality was very bad.

Apart from the evidence as above detailed, there is nothing to show any act of immorality, misconduct, or impropriety on the part of appellee. As will be seen, this evidence strongly tends to support appellant's contention and would have warranted a finding for him, if the court had given full faith and credit to the evidence of appellant and the witnesses introduced by him. It is apparent from the judgment that the chancellor concluded, as well he might have done, that witnesses who unblushingly and without seeming compunction of con-

science or reserve testified that they violated the sacredness of their brother's home and debauched his wife would have no regard whatever for truth or for the sanctity of their oath.

Not only is the reputation of the witness Collins for truth, veracity, and morality shown to be bad, but from the evidence of unimpeached witnesses it is shown that the act of intimacy between him and appellee did not and could not have occurred at the time and place as testified to by him. The circumstances under which it is claimed that Pleasie Burns had improper relations with appellee at the home of his brother are so improbable as to render his evidence and that of appellant regarding it as utterly unbelievable. Neither of the brothers claimed that there was a long continued improper relationship between them and their sister-in-law and it is strange indeed that in the few acts of delinquency to which they testified they selected a time and place where they would necessarily be detected by members of their own family. If appellee had been of such character as appellant and his family would make her, it is more than likely that he would have been able to have produced other witnesses to testify to such facts or at least in a measure to corroborate them. On the whole, the evidence is such as forbids a conclusion that the chancellor's finding of fact was unwarranted.

Unfounded charges of unchastity or lewd and lascivious conduct against the wife not made in good faith afford her grounds for divorce. Riley v. Riley, 233 Ky. 134, 25 S. W. (2d) 59; Morgan v. Morgan, 231 Ky. 420, 21 S. W. (2d) 653; Austin v. Austin, 243 Ky. 848, 50 S. W. (2d) 9.

It follows that if the wife was entitled to a divorce, she was also entitled to an allowance for alimony. Day v. Day, 168 Ky. 68, 181 S. W. 937; Kelly v. Kelly, 183 Ky. 172, 209 S. W. 335; Jones v. Jones, 205 Ky. 538, 266 S. W. 48.

Appellee has no separate estate and the property owned by appellant was acquired by their joint efforts and labor. The amount allowed her is certainly not out of proportion to the estate owned by him. We are therefore constrained to hold that the chancellor did not err in awarding alimony in the sum indicated or in sustaining appellee's attachment and adjudging her a lien to secure the payment of the sum allowed.

Judgment affirmed.