## Braden v. Braden.

Nov. 21, 1939.

R. H. Riggs for appellant.

Lovel H. Liles for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

The appellant, Maude Braden, and the appellee,

William Braden, were married in August, 1932. Mrs. Braden was 18 years of age and William Braden was approximately 36 at that time. Braden had been married before and had three children by his first wife. The two oldest children lived with the appellant and the appellee. The oldest child, a girl, was 17 years of age in 1938, and the next, a boy, was 14 at that time. The Bradens made their home in a house in Melrose near Russell, Greenup County, which was bought in the name of the appellee and his first wife. Two children were born to the appellant and appellee. The first one, a boy, was four years of age at the time Mrs. Braden left the appellee in August, 1938, and the other, a girl, was two months old at that time.

Braden had been employed by the Chesapeake & Ohio Railway Company for a number of years and earned a minimum of approximately $110 a month. There is some proof, however, that his earnings were as high as $150 to $180 a month at times. Braden appears to have provided a good home for his wife and children, and no question is raised as to his character or conduct other than his treatment of Mrs. Braden. During the time the parties were living together he paid off the remainder of the indebtedness against the home, bought a bedroom suite, an Electrolux refrigerator, some other furnishings for the home and finished paying for a 1929 Ford automobile. All of the neighbors who testified said that they had seen no difficulty between the parties and that Mrs. Braden was a good housekeeper.

Both of the parties appear to be high tempered. Difficulties arose in 1934 at about the time Braden was suffering from an injury. At that time Mrs. Braden filed suit for divorce, charging among other things that her husband had struck her with his fists several times and also had struck their infant son. They patched up their difficulties, however, and the suit was dismissed. Things seem to have gone along very well until several months before Mrs. Braden left the appellee in August, 1938.

Mrs. Braden brought this action seeking a divorce on the grounds of cruel and inhuman treatment. She alleged that her husband had beat her, that he had an "outrageous temper" and that she feared he would do her great bodily harm if she remained with him as his

wife. She sought custody of the two children, alimony, both temporary and permanent, sufficient for the maintenance of herself and her children, a part of the furnishings of the house, and a settlement of property rights. Braden filed an answer and counterclaim in which he denied that he had been cruel to his wife, or had beat her, or that she had any interest in the property, and in which he sought a divorce. He alleged that his wife had behaved toward him in such a cruel and inhuman manner as to indicate a settled aversion to him and to destroy permanently his peace and happiness. He alleged further that Mrs. Braden had a high and ungovernable temper and that she had told him on numerous occasions that she did not care for him and had called him "ugly and foul names," and on occasion had left their home and children "and run around over the country." He alleged also that Mrs. Braden was not "a fit and proper person to have the care, custody and control of their infant children due to the fact that she will not settle down to home life and is continually out at night and will not try to rear said children in good moral courses and properly provide for their comforts and necessities, * * *." A reply was filed in which Mrs. Braden denied the charges against her.

The chancellor refused to grant Mrs. Braden a divorce. In his opinion he said:

"* * * the evidence in this case does not justify a divorce to either party; both parties seem to be high tempered and this is the main source of their disagreement. The court is of the opinion that plaintiff should go back to the defendant's home and resume the marital relation. For this reason a divorce is denied to each party. The plaintiff, Maude Braden, is hereby awarded the custody of Annette Braden and the sum of $20.00 per month for maintenance of said child. Defendant, William Braden is awarded the care, custody and control of William Donald Braden, * * *."

An allowance of $35 was made for the appellant's attorney. Mrs. Braden is appealing.

It is insisted that the chancellor erred in failing to grant a divorce to the appellant; that error was committed in awarding the custody of the four year old boy to the appellee; that an inadequate allowance was made to the appellant and that she should have been awarded

a part of the household goods and an interest in the real property; and that the $35 allowance for her attorney was inadequate. Since it is urged that Mrs. Braden was entitled to a divorce, it becomes necessary for us to review briefly the evidence in the case.

In addition to her own testimony, Mrs. Braden offered that of her mother and a sister. The appellee's testimony consisted of his own and that of a number of neighbors. While there was no charge of lewd or lascivious conduct on the part of the appellant, questions raised during the examination of witnesses by counsel for the appellee indicate that an effort was being made to find out whether or not Mrs. Braden had been running around with other men. She testified that her husband had accused her of being unfaithful, but he denied this, saying that by accusing her of being unfaithful he meant "going out with that woman (Mrs. Porter)." Mrs. Porter was about 18 years of age and her husband was about 55. The testimony of some of the witnesses indicated that Mrs. Porter's reputation in the neighborhood was not beyond question.

Mrs. Braden testified that trouble arose between her and her husband early in the fall of 1937 as the result of her visiting the home of Mrs. Porter. She said that she went to Mrs. Porter's between 7:30 and 8 o'clock one evening. On her way she stopped with Mrs. Porter to talk with some people in a car. She said that after a short time she went on to the Porter home and that Mrs. Porter came on there a little later. Braden seems to have watched this episode. He rushed to the Porter home, and, according to Mrs. Braden, he called her "a dirty whore," and said, "Damn your soul to hell." Braden denied using these words, but testified that he told his wife to go home. Mrs. Braden said that the appellee shoved her back in a corner after they got back to their home. She testified that she had a part of a gun in her hand and that Braden shoved her in a corner and was cursing her as he was trying to get the gun away from her. Braden testified that he did not shove his wife in the corner and that he did not curse her. The testimony of the 17 year old girl and that of the 14 year old boy substantiates what Braden said as to this difficulty.

The immediate trouble which seems to have caused the separation was a difficulty between Mrs. Braden and

her 14 year old stepson. She was whipping her son when the stepson came into the picture. He hit Mrs. Braden a time or two and she shoved him around a little and tore his shirt off, according to his testimony. After this difficulty, Mrs. Braden called for her husband to come home. When he came he whipped the boy. Mrs. Braden testified that the boy threatened her with a gun the next day. There is also some testimony in behalf of the appellee that about this time Mrs. Braden was not preparing his meals and taking care of the house as she had done in the past.

It is obvious from the foregoing that the Bradens were having some difficulties in 1938, some of which involved the 14 year old boy. Counsel for the appellee objects to the use of the word "jealous" by the appellant's counsel, but the record shows clearly that, if Braden was not jealous, he was certainly suspicious of his wife at times. On the other hand, there is no showing of unfaithful conduct on her part. On the whole, Mrs. Braden seems to have been a good housekeeper and made a good home for the family. Braden was a good worker and a good provider.

We have reached the conclusion from our examination of the record that the chancellor correctly adjudged that neither party was entitled to a divorce. We are also of the opinion that his ruling as to the custody of the two young children should not be disturbed. The four year old boy was left with his father in a good home, and while he needs the care of his mother we think the circumstances as presented to us in the record are such that he will be better cared for if left with his father. Obviously, the young daughter, who was only a few months old at the time the judgment was entered, was properly left in the care of the mother. Mrs. Braden is entitled to no alimony, and in view of Braden's earnings we think the allowance of $20 a month for the maintenance of the infant child was reasonable.

There is no basis for the contention that Mrs. Braden should have been awarded a part of the home furnishings and the real property. Her only basis for such claims is that she did the housework and took care of the children. She left a good home for reasons which we have decided did not entitle her to a divorce. Braden indicated his willingness for her to return.

If present conditions are such that the chancellor's

ruling as to the custody of the two young children should be modified, either party may petition him for such change. Section 2123 of the Statutes; Singer v. Singer, 252 Ky. 707, 68 S. W. (2d) 34.

We have noted that it is contended that the allowance of $35 as a fee for the appellant's attorney is inadequate. Cases have been cited in which larger fees have been approved or directed. While the fee is not a large one, we are not disposed to disturb the chancellor's ruling on this point, in view of the conditions and circumstances presented in this case.

Wherefore, for the reasons given herein, the judgment is affirmed.