## Lester v. Lester.

Feb. 22, 1944.

B. J. Bethurum for appellant.

Gladstone Wesley for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

Appellant and appellee were married in 1918 and lived together until the spring of 1942 when appellee filed his action in the Pulaski circuit court against appellant for divorce upon the grounds of cruel treatment. Appellant filed her answer and counterclaim in which she denied appellee's right to a divorce and

asked that she be adjudged a divorce upon her counterclaim upon the same grounds, cruel treatment, and further sought custody and control of their four younger children, aged 19, 16, 14 and 11 years, respectively, and that she be awarded alimony in a sum as may be deemed proper and also be allowed maintenance for the support of the children, together with her costs, including reasonable attorney's fee. The evidence was taken and the chancellor adjudged appellee a divorce on his petition and dismissed appellant's counterclaim and adjudged that she take nothing thereby, and further adjudged appellant custody and control of the children and awarded her an allowance of $25 a month for the support of the children until they reach the age of 21 years, unless they should sooner marry or become self supporting, or until further orders of the court; and further specifically provided that the $25 per month should be for the use of the children; and further adjudged that appellant, together with the children, shall have the right to use and occupy the home of appellee until the children reach 21 years of age, or until they marry or become self supporting, at which time appellee will be entitled to the possession of the property. Verna Lester, defendant below, has appealed upon the ground that the judgment of the chancellor in awarding appellee a divorce on his petition and refusing her a divorce on her counterclaim is contrary to the evidence. She asks for a reversal of the judgment and that same be remanded with directions that the chancellor grant her a divorce on her counterclaim and in addition that she be awarded alimony in addition to the other relief sought.

Since this court is without power to reverse a judgment granting a divorce, we cannot reverse the judgment of the chancellor in granting appellee a divorce, regardless of whether or not such judgment was warranted by the evidence, Walton v. Walton, 228 Ky. 580, 15 S. W. (2d) 415; nor can appellant complain that a divorce was granted to appellee on his petition instead of to her on her counterclaim, since the judgment had the effect of freeing her from the bonds of matrimony the same as if it had been granted on her counterclaim. Irwin v. Irwin, 105 Ky. 632, 49 S. W. 432. It is also a well known rule that where a divorce has been improperly granted to the husband and the wife is entitled to maintenance, the judgment, insofar as it deprives her of that right, may be reversed, although

the improper decree of divorce cannot be disturbed. Riley v. Riley, 233 Ky. 134, 25 S. W. (2d) 59, and cases cited therein. The only question before us which we have a right to review and determine is whether or not the chancellor improperly granted a divorce to appellee.

Appellant, defendant below, testified that she and her husband had had trouble for the past several years. She said that when she was sick he did not want her to have a doctor and on one occasion their son, Vestal, told appellee that she was going to die and he said that she ought to die. That was just after she had had an operation. She detailed several other acts of cruelty and misconduct of a like nature over a long period of years. It appears that the incident that culminated in the separation of the parties occurred a few days before their separation in May, 1942, when appellant wanted to go to a basket ball game because their son was one of the players. Appellee objected to appellant going to see the game, saying that she just wanted to see the naked boys, but she still insisted on going to the game and when she began getting ready to go appellee approached her with his fist drawn and said: "I could kill you as free as I ever eat a bite in my life," but he did not strike her at that time. A few minutes later he came into the kitchen and struck her in the temple and knocked her back across the wall and was trying to get hold of a hammer but she seized the hammer before he got it. She said she did not go to the basket ball game because she was not able to go after they had the fight. She further testified that about a month prior to that time, on a night about bedtime, she and some of the other children were teasing one of the daughters about a picture and laughing at her, but appellee took no part in the conversation; pretty soon he went to bed and they continued their joking and laughing about the picture and he finally made some remark about them laughing and they told him they were not laughing at him, and he said: "I am going to kill you," meaning appellant. He got up and started toward appellant with his fist drawn and she thought she had to do something quick to keep him from hurting her and she seized the poker in an effort to protect herself and he grabbed her by the hand but she succeeded in hitting him with the poker. In the meantime, the daughters were trying to hold him and finally got him off of her and took him back to the door. She said: "He made

another dive for me, he was trying to get the poker all the time—I hit him with the poker and they finally got him back to the bedroom. I knew it was me or him —he said he was going to get a gun and kill the last G—— damned one of us.'' The two daughters of appellant and appellee, sixteen and nineteen years old, respectively, corroborated their mother's testimony concerning the two fights and all that occurred on those occasions. In addition to the evidence relating to the fights, appellant and the two daughters testified, in substance, that appellee was very disagreeable and quarrelsome and jealous; that he called her a whore, and when she would go to Somerset or other places he would accuse her of going to see men. This occurred frequently over a period of years.

It appears that appellee is a small, undersized man and physically weak. He is a barber by trade and engaged in the operation of a small barber shop in Science Hill, Pulaski county, and his net income or earnings was not in excess of $70 a month. There were seven children in the family and appellee's meager income was hardly sufficient for their support, education, etc., and it is shown by the undisputed evidence of neighbors as well as by appellant and the daughters that appellant sewed and worked for other people for hire and assisted in buying clothes, books, etc., for the children and endeavored to give them at least a high school education. On the other hand, appellee insisted that a grade education was sufficient and he and appellant had arguments and disagreements concerning the children's education.

The evidence is voluminous, consisting of two volumes aggregating approximately 225 pages. It appears that appellee testified in his own behalf and also took the depositions of other witnesses. However, in brief of appellee we are cited to no evidence relied on for appellee except where he made reference to certain misconduct of appellant which occurred approximately twenty years ago, which he admitted she confessed to him, and he continued to live with her. Their last four children were born after that occurrence, and since appellee has condoned whatever cause of action he might have had because of that misconduct, it has no place in this record, and hence it is unnecessary for us to discuss it.

Appellee admitted that he and his wife had the fights referred to but claimed that she was the aggressor or provoked the fights and he attempted to minimize his fault but only weakly denied certain other portions of material evidence of appellant and the two daughters. He admitted that he slapped appellant on various occasions and said ''she needed it a plenty'' but he did not explain what she did or why she needed it. He denied that he was not interested in the education of his children and said that he did all he could in his financial circumstances to educate his children and support them and appellant. He took the depositions of some of his neighbors but their evidence was principally limited to appellee's efforts to educate and care for his family, and according to their evidence, he did all that might have been expected of him, taking into consideration his income and financial condition. These witnesses did not claim to know anything about appellee's cruelty and misconduct toward appellant and does not tend to contradict the evidence of appellant and the two daughters on that phase of the case. Upon an examination of the evidence for ourselves, we are convinced that the judgment of the chancellor in granting appellee a divorce on his petition and also in refusing appellant a divorce on her counterclaim is contrary to the preponderance of the evidence.

It appears, however, that the $25 a month allowance for the support of the children is all that appellee is able to pay, taking into consideration his income and ability to earn money, and even though appellee was improperly granted the divorce, a further allowance against him for alimony for appellant would be improper at this time. But, since we have concluded that the divorce was improperly granted to appellee, it follows that she is entitled to alimony to be allowed when conditions become such as to enable appellee to pay alimony. The chancellor will retain the case on the docket for the purpose of allowance of alimony to appellant in the future, when the children, for whose benefit the $25 a month allowance was made, should marry or otherwise become self supporting as provided in the judgment, or other changed conditions which may enable appellee to pay alimony. Jones v. Jones, 239 Ky. 153, 39 S. W. (2d) 262; Reynolds v. Reynolds, 251 Ky. 294, 64 S. W. (2d) 576.

For reasons stated, the judgment is reversed to the extent and for the purposes indicated, and for proceedings not inconsistent with this opinion.