Patricia Kennedy CONLAN, Appellant,

v.

James Kenneth CONLAN, Appellee.

Court of Appeals of Kentucky.

Sept. 21, 1956.

Hargadon, Bennett & Lemaire, Louisville, Daniel Boon Smith, Harlan, for appellant.

James S. Green, Jr., Harlan, for appellee.

MILLIKEN, Chief Justice.

The questions presented arise out of a judgment of the Harlan Circuit Court awarding James Kenneth Conlan an absolute divorce from his wife, Patricia Kennedy Conlan. The wife has appealed contending she should have been awarded a divorce on her counterclaim, which contention we will not consider, since the divorce granted the husband effectively freed her from the bonds of matrimony. Irwin v. Irwin, 105 Ky. 632, 49 S.W. 432; Lester v. Lester, 296 Ky. 691, 178 S.W.2d 423. She asserts she should have been awarded sole custody of their two infant sons together with alimony and maintenance sufficient to care for herself and them. The wife's attorneys have attempted to inject the question of the adequacy of the fee allowed them, but since they are not parties to this appeal we cannot consider the question. Sabel v. Sabel, 286 Ky. 575, 151 S.W.2d 56. A preliminary procedural question is raised by the husband on cross-appeal.

Both of the parties hereto are physicians. The husband is a contract surgeon at the Harlan, Kentucky, hospital, earning $24,000 a year, and the wife, until her resignation, effective September 1, 1955, was County Health Officer of Harlan County, earning $600 a month. They were married on June 12, 1951, and moved to Harlan in June, 1952. Their first child, Gary, was born September 3, 1952, and is now four years of age. The first separation of the parties occurred September 18, 1953, when Mrs. Conlan went to the home of her mother in Louisville, taking Gary with her. At that time she was about four months pregnant with her second child. On September 21, 1953, Mrs. Conlan filed suit for divorce in the Jefferson Circuit Court, but she did not pursue this action because the parties were trying to reconcile their differences. They reunited for a two-week period during the 1953 Christmas season. The second child was born in Louisville on February 3, 1954, and is now two and one-half years of age.

Shortly after the second child was born Mrs. Conlan returned to Harlan and resumed relations with her husband.

The final separation occurred October 24, 1954, and on the following day the husband instituted the present action in the Harlan Circuit Court seeking a divorce, custody of the children, and a restoration of property. Mrs. Conlan, through her counsel, filed a motion to dismiss the husband's complaint on the ground the action filed by her in the Jefferson Circuit Court was still pending and therefore the Harlan Circuit Court was without jurisdiction. The Harlan Circuit Court overruled the motion to dismiss, concluding that the Jefferson Circuit Court action had been abandoned. Thereupon, counsel for the wife secured an injunction in the Jefferson Circuit Court prohibiting the husband from further pursuing his action in the Harlan Circuit Court. This injunction was dissolved by the Court of Appeals on July 15, 1955. On August 8, 1955, counsel for Mrs. Conlan filed her answer and counterclaim to the action pending in the Harlan Circuit Court. The preliminary procedural question is raised by the motion of counsel for the husband to strike the wife's answer and counterclaim to the Harlan Circuit Court action as not having been filed within the time allowed under C.R. 12.01. In reply to this motion the wife's counsel filed a motion under C.R. 6.02 for enlargement of time within which to file the answer and counterclaim. On October 3, 1955, the court ruled in favor of the wife, permitting her answer and counterclaim to be filed, and upon cross-appeal the husband contends the trial court erred in this respect, pointing out that the answer and counterclaim were filed some eighty days after the filing of his complaint.

C.R. 6.02 provides that when under the rules an act is required to be done within a specified time the court may " * * * upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of *excusable neglect* * * *." Italics ours.

In support of the motion for an enlargement of time within which to file the answer and counterclaim, one of the wife's attorneys, Harry L. Hargadon, of Louisville, Kentucky, filed his affidavit. We will not recite the contents of the affidavit except to say Mr. Hargadon in part attributed the delayed filing to the injunction proceedings had in the Jefferson Circuit Court and the Court of Appeals. Were we evaluating this affidavit originally, we would hesitate to say *excusable neglect* had been established, but we hereby affirm the ruling of the trial court because we fail to find that it abused its discretion in this instance. *Excusable neglect* is ordinarily understood to have been the act of a reasonably prudent person under the same circumstances. Sieb's Hatcheries v. Lindley, D.C., 13 F.R.D. 113.

When the Harlan Circuit Court action proceeded to judgment, the chancellor found that the wife was "primarily responsible" for the breach of the marriage tie between the parties and denied her a divorce on her counterclaim, denied her alimony and ordered her to restore certain property to the husband; he adjudged that both the wife and husband were suitable persons to have custody of the children and divided custody equally, allowing the wife to have the children the first six months of each year and the husband to have them the second six months, until the infants reach school age, at which time a new order is to be entered if the parents are unable to reach an agreement as to custody; he ordered the husband to pay $200 per month for maintenance of the children while in custody of the mother, and to pay any extraordinary expenses she incurred in their behalf.

The chancellor's factual finding that Mrs. Conlan was primarily responsible for the breach of the marriage does not necessarily preclude her from recovering alimony. Coleman v. Coleman, Ky., 269 S.W.2d 730. Dr. Conlan testified his wife told him she was leaving him in order to get reestablished in the church; that their dif-

ficulties arose mainly from religious differences. The wife is a Catholic while he professes to be a Protestant. They were married outside the church because he had been previously married and divorced. He also testified she nagged him about devoting too many afternoons to golf, a game which he found quite relaxing after long hours of surgery. The wife denies their ever having any disagreements over religion. She testified that her husband beat her and called her vile names and threatened to kill her; that she left home with the children because she was afraid of him. He testified she violated their agreement not to raise the children as Catholics by having them secretly baptized into the church. She denied that they ever made such an agreement prior to their marriage, or even discussed the problem. While it appears to us that the parties are about equally at fault, we cannot say the chancellor was clearly erroneous in concluding the wife was more at fault and in denying her alimony.

■■ In any event, it is palpable from the record that this appeal is here because each of the parties is primarily interested in gaining sole custody of their two infant sons. The evidence supports the chancellor's finding that both parties are suitable persons to be entrusted with their custody, but the wife contends she should be awarded sole custody because the children are of tender years. Counsel for the wife cite numerous cases supporting the general rule that children of tender years should ordinarily be committed to the care of the mother, where she is morally fit as Mrs. Conlan undoubtedly is. Riggins v. Riggins, 216 Ky. 281, 287 S.W. 715, and Skidmore v. Skidmore, 261 Ky. 327, 87 S.W.2d 631, are cases exemplifying this rule. Counsel for the husband cite the following cases in which this court has approved split-custody arrangements, where, as here, there was no moral unfitness attributable to either parent.

Belknap v. Belknap, 265 Ky. 411, 96 S.W.2d 1012; Braden v. Braden, 280 Ky. 563, 133 S.W.2d 902; Garner v. Garner, Ky., 282 S.W.2d 850; Sharp v. Sharp, Ky., 283 S.W.2d 172. However, it is inferable that this court ordinarily does not look upon such arrangements with favor. Garner v. Garner, Ky., 282 S.W.2d 850.

■ Nevertheless, under all the facts and circumstances of this case we cannot say the chancellor erred. In deciding this very important question, a large discretion must be given the chancellor. Youngblood v. Youngblood, Ky., 252 S.W.2d 21.

These children should be reared in a re-united home. Absent that possibility, this court is unable to say their general long-range welfare will not be best served by adhering to the split-custody arrangement fixed by the chancellor. When the children reach school age, there may be developed before the chancellor facts concerning their care while in the temporary custody of each parent—such as who actually cared for the children while the parents pursued their profession, what visitation privileges were allowed the other parent, etc.—which will enable the chancellor to finally determine who should be charged with the permanent custody of these two young boys.

■ With respect to the allowance for maintenance of the children while in the custody of the wife, $200 per month seems inadequate since we may properly consider the wife and children as a unit for maintenance purposes during those periods of time. Eaves v. Eaves, Ky., 286 S.W.2d 371. Therefore, we order the allowance increased to $400 per month while the wife has custody.

The judgment is affirmed except as to the maintenance for the children while in the custody of their mother and that is increased as specified as above.