**Wendell COX, Appellant,**
v.
**Elaine COX, Appellee.**

Court of Appeals of Kentucky.
Feb. 17, 1961.

Robbins & Cross, Mayfield, for appellant.

Martin, Neely & Reed, Mayfield, for appellee.

PALMORE, Judge.

Elaine and Wendell Cox, married in 1953, separated in September of 1957 and she sued for divorce on the ground of cruel and inhuman treatment. Within a matter of days they reunited and the suit was dismissed. A month later she left him again and, on the same ground, brought this action for divorce, alimony and custody of their little girl, then 4½ months old. He answered, traversing the grounds, pleading condonation and recrimination, and counterclaiming for divorce on the ground of cruel and inhuman treatment by the wife.

On the evidence submitted the circuit court awarded Elaine a divorce, custody of the child subject to visitation privileges, $50 per month for support of the child, and the equivalent of $3,500 by way of property restoration, the latter amount being secured by a lien against the parties' home, which had theretofore been vested in them as tenants by the entirety but was ordered conveyed to the husband. Wendell appeals, contending he was the only one entitled to the divorce and that the $3,500 award for property restoration was erroneous. Elaine cross-appeals on the ground that the $50 monthly allowance for support of the little girl was not enough. There is no custody contest.

■ The burden of Elaine's testimony was that Wendell resented and was jealous of her mother and father and objected to her visiting them, which was often. This led to constant strain and bickering in which he would become ugly over mere trifles, resulting on several occasions in his slapping or striking her with his fists. They would curse each other. Once he got her on the floor and choked her. Another time he struck her on the mouth and cut her lip. All summer long in 1957 he persisted in calling her a bitch. During the marriage she had suffered a nervous breakdown and was hospitalized for a short time. Thereafter he made scornful allusions to her physical frailty. She thought, too, that he was purposely trying to drive her crazy. We do not accept all of this at face value, nor did the trial court, but that was her side of the story, and it certainly furnished enough probative evidence to sustain the chancellor's judgment in granting her a divorce.

Wendell's version was to the effect that all of these things were greatly magnified and that Elaine frequently misinterpreted his attitude. This would be consistent, of course, with the nature of a highly nervous woman. Wendell made a straightforward witness, and his testimony carried the ring of truth and moderation. Hence in his memorandum opinion the chancellor remarked that neither party was without fault. Since, however, he chose to grant the divorce to Elaine we must assume that he found her fault to be the lesser, and insufficient to support Wendell's plea of recrimination; and in view of the sharp conflict in the evidence we cannot say that his judgment in this essentially factual area of the case was erroneous.

■ With respect to the defense of condonation, based on the brief reconciliation following the first divorce suit, it has been held that in cases of continuing offense, including cruel and inhuman treatment, condonation will not be implied from the resumption of normal marital relations. York v. York, Ky.1955, 280 S.W.2d 553, 556. Indeed, it would ill behoove the law to discourage reconciliation, or to encourage sham reconciliations entered into by one of the parties for the purpose of disarming the other, by attaching a penalty in the name of condonation. Therefore, it would seem that only under the rarest of circumstances could the defense of condonation be effective in a case of cruel and inhuman treatment. In the instant case there is no evidence that Elaine entered into the reconciliation for a deceitful purpose or that she gained any advantage from it. Her case cannot be weighed just on the basis of what happened or did not happen during the period of reconciliation. That is certainly a chapter for the trial court to consider, but it is not the whole book. The defense of condonation cannot be applied to the facts of this case.

The real issue on appeal is the lump sum monetary award. At the time of their final separation the parties had $660 in the bank ($330 of which was drawn out by Elaine), a car valued at $900 to $950, a residence worth $6,000 to $6,500, and furniture. There were no encumbrances. After restoring certain items of the furniture to Elaine, the chancellor found the value of the property to be $7,600. His memorandum opinion directed that in the judg-

**398**

ment to be drawn "the plaintiff should be paid $3,500.00 for her part, less the $330.00 drawn from the bank account. * * * and if she is not entitled to the said sum of $3,170.00 balance as her portion, then she should be awarded the said sum of $3,170.-00 as lump sum alimony." However, in a bit of overzealous draftmanship the judgment, evidently prepared by counsel, recited that the $7,600 in property had been accumulated by the joint efforts of the parties and awarded Elaine $3,170 as and for her interest in it. Technically, therefore, no part of the sum was awarded as alimony.

The facts were that when the parties married Elaine had $250 in the bank and owned two U. S. bonds of the face value of $500 each. She ceased her own employment shortly after the marriage and had no separate income except for the small gifts hereinafter mentioned. Her $250 in money went into the joint account. One of the bonds, then worth $400, went toward the purchase of the car. Her father paid $300 (though Wendell contends it was $190) on her hospital bill when she had the nervous breakdown. They lived with her parents for several months rent-free, thus making it easier for Wendell to accumulate from his salary $1,000 ultimately used as a down payment on their home. The home was purchased from Elaine's grandfather, who let them pay off a $4,500 balance at the rate of $100 per month without interest. In addition to these direct and indirect contributions attributable to Elaine her mother and father made small but frequent monetary gifts to her, which had the effect of reducing to a minor extent the living expenses. All of these things, we think, would have supported a purely restorative award of approximately $1,200, leaving $6,400 as the net estate of the husband. An allowance of $2,300, or 36%, as alimony would be liberal, but not so excessive as to be set aside on appeal. There is no hard and fast rule on the matter. Alexander v. Alexander, Ky.1958, 317 S.W.2d 494, 495.

We have considered the question of whether and to whom the divorce should have been granted only as it bears on the matter of alimony. Since, however, there was no moral delinquency alimony would have been permissible even if the divorce had been rightly granted to the husband. Coleman v. Coleman, Ky.1956, 269 S.W.2d 730; Conlan v. Conlan, Ky.1954, 293 S.W. 2d 710; Bailey v. Bailey, Ky.1956, 294 S. W.2d 942. Considering the judgment in this case in connection with the chancellor's memorandum opinion from which it was drawn, the lump sum award must be treated as combined alimony and restoration of money and property contributed by the wife to the accumulation of the property finally adjudged to the husband. So construed, the judgment is properly supported by the evidence.

We shall not disturb the award of $50 per month for support of the child. It is modest, but if it proves insufficient the chancellor may modify it upon application.

The judgment is affirmed.